In the Interest of B_____ M_____ N_____, a child.

No. 8590.

Court of Civil Appeals of Texas, Texarkana.

Aug. 22, 1978.

Harlan A. Martin, Martin & Martin, Dallas, for appellant.

Jack Napier, Dallas, for appellee.

RAY, Justice.

This is a paternity suit. The natural mother, petitioner, filed suit seeking to establish that a parent-child relationship exists between her minor son, B_____ M\_\_\_\_\_N_____, and the alleged father, respondent. Petitioner pursued the statutory method of having the respondent declared the biological father of her minor son under Sections 13.02, et seq., (Supp.1978), of the Texas Family Code. Further, petitioner sought to have respondent pay child support for the minor child under Section 13.42 (Supp.1978).[1] The trial court ordered that blood tests be taken on the mother, child and alleged father. At the end of the pretrial proceedings, the court determined from the blood test evidence that the alleged father was not in fact the father of the child and dismissed the suit with prejudice in accordance with Section 13.05(a). Appellant has perfected her appeal from the dismissal of the suit and presents one point of error for our consideration.

## THE ISSUE

Appellant submits that the following is the question to be resolved:

"Petitioner's sole contention is that the mandate under § 13.05(a) of the Texas Family Code requiring the dismissal with prejudice of Petitioner's cause of action seeking to establish the paternity of her illegitimate child is unconstitutional in that the threshold determination wholly predicated upon the results of blood tests showing that the Respondent is not the natural father of Petitioner's illegitimate child is a procedure violative of due process as required by Article 1, § 13 of the Constitution of the State of Texas."

## THE FACTS

B\_\_\_\_\_M\_\_\_\_\_N\_\_\_\_\_, a male child, was born out of wedlock on the 28th day of

---

1. Unless otherwise indicated, all references are to chapters and sections of the Texas Family Code (Supp.1978).

September 1976, in Harris County. On February 29, 1977, appellant sued respondent, alleging the respondent to be the natural father of the minor child. On April 25, 1977, the trial court ordered all parties to submit to blood tests to be conducted by the Southwestern Institute of Forensic Sciences of Dallas. Thereafter, a serologist employed by the Southwestern Institute of Forensic Sciences conducted the court ordered blood tests on the mother, child and alleged father. On May 10, 1977, the serologist furnished the trial court her report detailing the results of all blood tests, and stated that her analysis of the blood tests excluded the possibility that respondent was the natural father of the minor child. On June 2, 1977, petitioner requested the trial court to proceed under Section 13.04 and order a pretrial conference for the purpose of determining the results of the previously ordered blood tests. The pretrial conference was held on August 10, 1977, and at the conclusion of the hearing the court ordered the case dismissed because the court was of the opinion that the blood tests showed by clear and convincing evidence that respondent was excluded as being the natural father of the child.

## RESOLUTION OF THE ISSUE

The posture in which this case is presented to this court is unique and presents a case of first impression. Appellant does not present questions of due process or equal protection of the law under the fourteenth amendment to the U.S. Constitution though some discussion of the due process clause and equal protection clause will be alluded to in this opinion.

Article 1, § 3 of the Texas Constitution provides the following:

"All free men, when they form a social compact, have *equal rights*, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services." (Emphasis added.)

Article 1, § 13 of the Texas Constitution provides in pertinent part the following:

". . . All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."

Article 1, § 19 of the Texas Constitution provides the following:

"No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

The fourteenth amendment to the U.S. Constitution provides in pertinent part the following:

". . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Chapter 13 of the Texas Family Code is styled "DETERMINATION OF PATERNITY." Subchapter A relates to paternity suits and the procedure to be followed. Section 13.02 provides that in a paternity suit the court shall order the mother, alleged father and child to submit to blood tests. Section 13.03 provides that the court may appoint two or more experts qualified as examiners of blood types to make the blood tests and any party may employ other qualified examiners of blood tests if they so desire. Section 13.04 provides that after the completion of the blood tests, the court shall hold a pretrial conference at which the examiners shall be called to testify. The court and the parties may examine and cross-examine all witnesses.

Section 13.05 provides the following:

"Pretrial Proceedings: Effect of Blood Tests.

"(a) At the conclusion of the pretrial conference, if the court finds that the tests show by clear and convincing evidence that the alleged father is not the father of the child, the court shall dismiss the suit with prejudice.

"(b) If the court finds that the blood tests fail to show by clear and convincing

evidence the alleged father is not the father of the child, the court shall set the suit for trial."

■ Article 1, § 13 of the Texas Constitution is based largely upon Chapter 40 of the Magna Charta, which provides, "To none will we sell, to none deny, or delay, right or justice." Article 1, § 13, supra, does not create any new right but is merely a declaration of a general fundamental principle and means that for such wrongs as are recognized by the law of the land, the courts shall be open and afford a remedy. Article 1, § 3 of the Texas Constitution is the Texas equivalent of the *equal protection* clause of the fourteenth amendment to the U.S. Constitution as distinguished from the "due process" clause.

In *Home of the Holy Infancy v. Kaska,* 397 S.W.2d 208 (Tex.1965), the Texas Supreme Court had under consideration the legitimacy of a child. There it was certain that the plaintiff was the biological father of the child in question. The father and the mother were ceremonially married after the child was conceived and the child was born after the mother had the marriage annulled. The court held that the marriage though voidable, nevertheless legitimated the child under the then existing provisions of Tex.Rev.Civ.Stat. art. 4639 (1925) (repealed; Tex.Law 1973, ch. 543, § 3 at 1458) and Tex.Probate Code § 42 (1956). However, the court in discussing the entire problem of support stated at page 210 that a father was not under a common law or statutory duty to support his illegitimate child. Subsequently, the U.S. Supreme Court in *Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973), concluded that the Texas common law rule that illegitimate children had no legal right to support from their fathers was unconstitutional because it violated the *equal protection* clause of the fourteenth amendment of the U.S. Constitution. In *Gomez,* supra, the mother of an illegitimate child brought an action against the asserted biological father of the child to have him declared to be the father and to require him to support the child. The finding that the alleged father

was the true father was not questioned on appeal. Later, *In Interest of R___ V___ M___, A Child,* 530 S.W.2d 921 (Tex.Civ.App. Waco 1975, no writ), the Waco Court of Civil Appeals had before it an almost identical case to that of *Gomez.* In both *Gomez* and *R___ V___ M___,* actions were brought to declare the alleged father to be the biological father of the child and to require him to support the child. In both actions, no question was raised on appeal concerning the finding that the defendant was the father. The support action was defended on the ground that there was no statutory or common law basis for requiring a father to support his illegitimate child. The Waco Court of Civil Appeals followed the *Gomez* decision and held that an illegitimate child was entitled to support from its biological father. Both cases were decided on the basis of the equal protection clause of the fourteenth amendment. Suit was filed in *R___ V___ M___* on June 25, 1974, and judgment rendered by the trial court on May 23, 1975. Chapter 13 of the Texas Family Code became effective September 1, 1975. (Acts 1975, 64th Leg., p. 1261, ch. 476, § 24).

With this background in mind, appellant asserts for the first time on appeal, that Texas has a common law remedy for establishing paternity and cites *Gomez* as authority. The question of whether or not there exists a common law right to establish paternity was neither raised nor decided in *Gomez* or *R___ V___ M___.* That same question was not raised by the pleadings or otherwise in the trial court in this case. The present case was filed subsequent to the adoption and effective date of Chapter 13 of the Texas Family Code. We need not decide whether a common law action existed prior to the adoption of Sections 13.02, et seq., because that question is not presented to us for determination. In the instant case, the procedures outlined by Section 13.02, et seq., were sought by petitioner and ordered followed by the trial court. The mother, child, and alleged father all submitted to blood tests and following completion of the tests, testimony was heard by the trial court concerning such

tests. At the conclusion of the hearing, the trial court determined from the evidence that the blood tests showed by clear and convincing evidence that the alleged father was not in fact the father of the minor child and ordered that the case be dismissed with prejudice.

## EQUAL PROTECTION

■ No specific contention has been made that Chapter 13 of the Texas Family Code presents any question under the *equal protection clause* of the fourteenth amendment to the U.S. Constitution or the Texas Constitution. Only the "due process" question has been raised. It is doubtful that an equal protection question could arise since the Texas Legislature has sought to bestow upon illegitimates rights which they perhaps never had in the past. The purpose of Section 13.02, et seq., is to provide a procedure for illegitimates to establish their parentage. In this setting, the Texas Family Code has not established a "suspect" class and neither has such legislation impinged explicitly or implicitly upon a substantive right or liberty created or conferred by the Texas or U.S. Constitutions. Conversely, such legislation has created an avenue for the establishment of paternity which was not clearly established in the past. The equal protection clause of the U.S. Constitution confers no substantive rights and creates no substantive liberties and neither does Article 1, § 3 or § 13 of the Texas Constitution. See *San Antonio School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). For a more thorough discussion of how the equal protection clause of the U.S. Constitution has been applied to illegitimates, see 32 Arkansas L.Rev. 120 (Spring 1978); 13 Hous.L.Rev. 1062 (1976); *Cessna v. Montgomery*, 63 Ill.2d 71, 344 N.E.2d 447 (1976); *Texas Department of Human Resources v. Chapman*, 570 S.W.2d 46 (Tex.Civ.App. Dallas 1978, not yet reported).

■ In responding to the equal protection problems raised in cases concerning illegitimates, the U.S. Supreme Court has not applied either the rational basis test or the strict scrutiny tests, the traditional alternative modes of equal protection analysis. Instead, in *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972), the majority opinion fashioned a balancing test:

"The essential inquiry . . . is . . a dual one: What legitimate state interest does the classification promote? What fundamental personal rights might the classification endanger? "

However, instead of engaging in a balancing process, the court relied on a strengthened form of the traditional rational basis test which has been termed "rationality scrutiny." Rationality scrutiny, unlike balancing, is concerned only with means, not with ends, and does not attempt to weigh asserted state purposes against individual rights. In *Weber*, supra, the court struck down a workmen's compensation statute which denied illegitimate children recovery for the death of their father on an equal basis with legitimate off-spring. Analysis of the compensation scheme under the "rationality scrutiny" standard led the court to conclude that "The state interest in legitimate family relationships is not served by the statute; the state interest in minimizing problems of proof [of paternity] is not significantly disturbed . . . .".

The U.S. Supreme Court has hinted at the application of strict scrutiny to classifications based on illegitimacy, but has consistently refused to label illegitimacy as "suspect." The court has preferred to apply a middle standard, sometimes a balancing of state against individual interests and sometimes a means-focused rationality scrutiny. However, punishment of the illegitimate child has never been considered as a valid state interest; the court has repeatedly declared that ". . . imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing." *Weber v. Aetna Casualty & Surety Co.*, supra. In *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), the court rejected application of strict scrutiny

to a classification based on illegitimacy. The majority opinion made it clear that merely invoking a legitimate state interest will not suffice to save the statute, as it might under the pure rational basis test. Instead, the court, essentially adopting the balancing test previously enunciated by Justice Powell in *Weber*, decided that it would weigh the competing state and individual interests to determine the statute's constitutionality. The court in *Trimble* decided that it will inquire whether the proffered means contained in a statute are designed in fact to achieve the desired end; that it must be established that the statute does not present an insurmountable barrier to inheritance; that the difficulty involved in proving paternity in a few situations does not justify total statutory disinheritance of illegitimates whose fathers die intestate.

■ We have analyzed the opinions of the U.S. Supreme Court as applied to illegitimacy cases involving the equal protection clause, and have concluded that § 13.02 through § 13.05 of Chapter 13 of the Texas Family Code meet both the balancing tests and the rationality scrutiny tests, plus the strict scrutiny and rational basis tests.

■ Under the rational basis test, we find that Section 13.05(a) bears a reasonable relationship to the legislative purpose of determining paternity. Under the strict scrutiny test, we find that no fundamental right is threatened or that illegitimacy is a suspect classification in the setting here involved. Under the balancing test we find that the state has a legitimate interest in providing a method for determining paternity and that no fundamental personal rights of appellant have been endangered by the Texas Family Code because that section was specifically designed to correctly identify the paternity of a child by acknowledged scientific tests. Lastly, the rationality scrutiny test is met because the means of determining paternity in fact provides a method for accurately determining parentage and the prevention of invalid claims of paternity and as such, is a valid governmental interest which Chapter 13

was designed in fact to achieve. If it can be said that appellant has raised an equal protection issue by alluding to Article 1, § 13 of the Constitution of the State of Texas in her point of error, such contention is overruled.

## DUE PROCESS

The remaining question is whether or not appellant was denied due process of law in this case. Appellant contends that the mandatory dismissal called for in Section 13.05(a) denied her due process of law.

■ It is fundamental that before a person can be deprived of rights or property he must be given notice of such potential deprival and be given an opportunity to show that such deprival should not occur. 16A C.J.S. Constitutional Law § 567b (1956). The requirements of notice, hearing and proof have been met by the Texas Family Code, Sections 13.02, et seq. Before a claim of paternity can be dismissed, the court must be presented with "clear and convincing evidence" that the blood tests show that the alleged father is not in fact the biological father of the child. The Family Code also provides that the petitioner may employ a qualified examiner of blood tests to testify in her behalf and that all witnesses may be examined and cross-examined and that all evidence presented at the pretrial conference shall become a part of the record in the case. In this case, appellant was afforded all of the opportunities of the Texas Family Code as appellant had requested. It does not follow, however, that appellant should be afforded the opportunity under Section 13.05(a) to prove by circumstantial evidence that which can be proved conclusively by scientific evidence.

Today, it is generally recognized that blood group testing may be used to conclusively prove that a man is not the father of a certain illegitimate child. The only qualification placed upon the rule is that the tests must be conducted by qualified persons. M. Shaw and M. Kass, *Illegitimacy, Child Support and Paternity Testing*, 13 Hous.L.Rev. 41, 47–51 (1975); J. Wigmore,

Wigmore on Evidence, § 165a and § 165b (3d ed. 1940); Annot., 46 A.L.R.2d 1003 (1956) at 1015 and 1028. The Texas Legislature has recognized the scientific validity of blood tests and gives those tests their fullest effect. Sections 13.04 and 13.05, supra; Eugene L. Smith, *Parent and Child*, 8 Tex.Tech.L.Rev. 19 (1976), at page 60. This Court recognizes the value of blood tests in determining parentage and that such tests have gained wide acceptance in recent years. 13 Hous.L.Rev. 41, supra, at page 50. The reliability of blood tests as an indicator of the truth has been fully established and we see no reason why the Texas Legislature could not give such tests the conclusiveness outlined in Section 13.05(a), supra. *Cortese v. Cortese*, 10 N.J.Super. 152, 76 A.2d 717, 719 (1950); 13 Hous.L.Rev. 41, supra, at page 50.

It is the conclusiveness of the blood tests excluding the alleged father as the biological father about which appellant so vigorously complains. Appellant has neither asserted nor proved that any other method is more accurate or more reliable than the method provided for in Section 13.05(a) in determining those who could not be biological fathers of illegitimate children. Section 13.05 recognizes the conclusiveness of the tests as excluding possible fathers while at the same time it provides for further proceedings if the blood tests fail to exclude the alleged father as the true father. Section 13.06 provides that the blood tests are admissible to show the possibility of the alleged father's paternity. If the blood tests had shown the possibility of the alleged father being in fact the biological father, appellant could have proceeded to introduce evidence of periods of conception and gestation, the evidence of possible paternity shown by the blood tests, evidence of the resemblance of the child to the alleged parent and admissions of the alleged father bearing on paternity. However, such evidence is not admissible when the blood tests show conclusively that the alleged father could not have been the one who impregnated the appellant. This is true because the legislature has determined that blood tests are the most accurate

methods yet devised by man to determine the lack of paternity of an alleged father and that a more precise test is not yet available.

"Evidence of paternity may take a variety of forms, some creating more significant problems of inaccuracy and inefficiency than others. The states, of course, are free to recognize these differences in fashioning their requirements of proof. . . ." *Trimble v. Gordon*, supra, 430 U.S. at page 772, n. 14, 97 S.Ct. at p. 1466; 32 Arkansas L.Rev. 120, supra, at page 127.

Appellant did not complain of the scientific accuracy of the tests nor did she offer any proof to discredit such tests. Neither does she complain of the sufficiency of the evidence which established that respondent was not in fact the biological father.

In the present case, the Texas Legislature has attempted to provide equal protection and due process for illegitimates through the passage of Section 13.02, et seq. The purpose or aim of the statutes is to provide a method for determining paternity. The goal of the act is not to declare the alleged father to be the father, but it is to identify the true biological father and to exclude those who are not a possible biological father. This action by the legislature has penetrated the barrier that formerly could have worked as a shield to possible invidious discrimination. Texas has at least provided the minimum procedure for individualized determination of parentage.

Appellant has not made it clear as to whether she is complaining of the denial of substantive due process, procedural due process, judicial due process or legislative due process. It seems most likely that she is complaining of the denial of procedural due process since she states that her sole contention is that the dismissal following the pretrial conference is a "procedure violative of due process as required by Article 1, § 13 of the Constitution of the State of Texas." Section 3 of Article 1 of the Texas Constitution is the Texas equal rights section and Section 19 of Article 1 of the

Texas Constitution is the due process section, though Article 1, § 13 may also be considered a "due process" section.

▮▮▮▮ Assuming, without deciding, that a common law right to establish paternity existed, as suggested by Justice Cadena in his dissent in *G____ v. P____*, 466 S.W.2d 41 (Tex.Civ.App. San Antonio 1971, writ ref'd n. r. e.), cert. granted, *Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973), there is no prohibition against the legislature changing the rules by which a common law right may be established. As stated in *Middleton v. Texas Power & Light Co.*, 108 Tex. 96, 185 S.W. 556, 559 (1916), affirmed, 249 U.S. 152, 39 S.Ct. 227, 63 L.Ed. 527 (1919), ". . . no one has a vested interest in the rules, themselves, of the common law; and it is within the power of the Legislature to change them or entirely repeal them." Section 13.05(a) does not deprive illegitimates of any fundamental right. On the contrary, it is the aim and policy of Chapter 13 of the Texas Family Code to provide a procedure for establishing paternity. Section 13.05(a) limits the proof to scientific evidence rather than circumstantial evidence in determining that the alleged father is not in fact the biological father of the illegitimate child. The rational basis for this procedure is that the legislature has determined that blood tests are the most accurate methods to determine the lack of paternity of an alleged father. By declaring the blood tests to be conclusive under Section 13.05(a) at the pretrial conference, such procedure not only saves judicial time, but it saves the alleged father the embarrassment of having to go through a public trial when the evidence is clear and convincing that he is not in fact the biological father. It is our conclusion that Section 13.05(a) bears a rational relationship to the objective of determining paternity under Chapter 13 of the Texas Family Code. The statute thus affords appellant procedural due process under Article 1, § 19 of the Texas Constitution and under the due process clause of the fourteenth amendment to the U.S. Constitution while at the same time affording respondent some protection.

The interpretive commentary following Texas Constitution Article 1, § 19, traces the history of due process in Texas. Originally the due process clause was construed as applying to the method of making a judicial or administrative decision. It applied directly to the machinery or procedure by which people were tried for a crime, by which property rights were adjudicated, by which the powers of eminent domain and taxation were exercised. Legal proceedings were and are required to be conducted by the rules and forms established for the protection of private rights. Otherwise, life, liberty or property would be taken without due process of law so as to be violative of the fundamental principles of the law of the land. *Steddum v. Kirby Lumber Co.*, 110 Tex. 513, 221 S.W. 920 (1920).

▮▮▮ The commentary further states that as applied to procedure, due process requires a fair and impartial trial before a competent tribunal. Included within this requisite is an opportunity to be heard, and reasonable opportunity to prepare for the hearing, which, of course, encompasses reasonable notice of the claim or charge against an individual so as to advise him of the nature thereof, and the relief sought.

▮▮▮ The right to a hearing requires a judicial examination of every issue that, according to established procedure, may affect the attainment of a legal trial, and in such a trial determine the cause according to law. There should be opportunity given to cross-examine witnesses and to produce witnesses and to be heard on questions of law.

"Due process of law not only includes procedural protection, but also substantive protection. It is a direct constitutional restraint upon the substance of legislation and means that a legislative curtailment of personal or property rights must be justified by a resultant benefit to the public welfare. Thus, the due process guaranty does not restrain the state in the exercise of its legitimate police powers. . . ."

Both liberty and property are subject to the exercise of these powers.

**503**

In substantive due process cases, the courts balance the gain to the public welfare resulting from the legislation against the severity of its effect on personal and property rights. A law is unconstitutional as violating due process when it is arbitrary or unreasonable, and the latter occurs when the social necessity the law is to serve is not a sufficient justification of the restriction of the liberty or rights involved.

Our examination of Chapter 13 of the Texas Family Code, and in particular Section 13.05(a), leads us to conclude that the Texas Legislature has providently afforded illegitimates generally and appellant specially, both substantive and procedural due process. Accordingly, we hold that Section 13.05(a) is constitutional and that appellant has not been denied either substantive or procedural due process or equal protection under the provisions of the U.S. Constitution or the Texas Constitution related thereto.

In our review of the sections of Chapter 13 of the Texas Family Code, we have noticed that the legislature has not provided a method for determining paternity when blood tests of all parties are not available. How does an illegitimate child, or a posthumously born illegitimate child, prove paternity when the alleged father is deceased and his blood test is not available? We do not believe that this question has been answered in *Weber*, supra; *Trimble*, supra; *Gomez*, supra; or in *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968) or *Glona v. American Guarantee & Liability Insurance Co.*, 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968), or by the legislature.

The judgment of the trial court is affirmed.