ACCEPTED
03-14-00732-CV
5377959
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/21/2015 12:18:35 PM
JEFFREY D. KYLE
CLERK

## NO. 03-14-00732-CV

### IN THE COURT OF APPEALS
### THIRD JUDICIAL DISTRICT
### AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/21/2015 12:18:35 PM

JEFFREY D. KYLE
Clerk

ATHEER HANNA,

Appellant,

vs.

MEDSTAR FUNDING, LP

Appellee.

On Appeal From The 345TH Judicial District Court for
Travis County, Texas
Trial Court Case No. D-1-GN-14-001432-CV

### APPELLANT'S REPLY BRIEF

**FRANK G. CAWLEY**
State Bar No. 24006978
**Whitehurst & Cawley, L.L.P.**
4560 Belt Line Rd., Suite 200
Addison, Texas 75001
(972) 503-5455
(972) 503-6155 – Facsimile
Email: fcawley@whitehurstlaw.com
ATTORNEYS FOR APPELLANT

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ ii, iii

INDEX OF AUTHORITIES ..................................................................................... iv, v

SUMMARY OF REPLY ................................................................................................. 1

ARGUMENTS AND AUTHORITIES IN REPLY ....................................................... 3

**A.** **Medstar's business model is not a true factor and is designed to circumvent Section 41.0105 and *Haygood v. Escabedo*** .............. 3

**B.** **The plain language of Section 41.0105 precludes the recovery of Medstar's commission or business profit margin, which are clearly not "medical or healthcare expense."** ......................... 5

**C.** **Matte's contractual liability to Medstar does not make medical expenses that have not been and will not be paid to a medical provider recoverable** ........................................................ 6

**D.** **Medstar's assignment of Matte's medical providers' claims does not transform Medstar into a medical provider** ...................... 8

**E.** **The amounts Medstar paid Matte's providers and the contracts between Matte and those providers are relevant to determine the reasonable value of medical services** ................................ 9

**F.** **Medstar's proposed stipulation that it paid a reduced rate does not negate the need for payment and contract information** .......... 11

**G.** **Denying Appellant access to the requested information would deprive him of his due process right to be heard and present evidence** ............................................................................. 11

CONCLUSION AND PRAYER ................................................................................... 13

CERTIFICATE OF SERVICE ..................................................................................... 15

CERTIFICATE OF COMPLIANCE ................................................................16

# INDEX OF AUTHORITIES

**Case Law:**

*Dodd v. Cruz,*
      223 Cal. App. 4th 933, 942 (Cal. App. 2d Dist. 2014)..........................10

*Fuentes v. Shevin,*
      407 U.S. 67, 80, 92 S. Ct. 1983, 32 L. Ed. 2d 556, 569 (1972)...............12

*Galaviz v. C.R. Eng. Inc.,*
      2012 U.S. Dist. LEXIS 53866, *8-9 (W.D. Tex. Apr. 17, 2012)..............10

*Haygood v. Escabedo,*
      356 S.W.3d 390, 391 (Tex. 2011)......................................3, 5, 6, 7, 9

*In the Interest of BMN,*
      570 S.W.2d 493, 502 (Tex. Civ. App. – Texarkana 1978, no writ)..........12

*Perry v. Del Rio,*
      67 S.W.3d 85, 92 (Tex. 2001)......................................................12

*Ranger Ins. Co. v. Ward,*
      107 S.W.3d 820, 829 (Tex. App.—Texarkana 2003, pet. denied)..............5

*Tex. Mut. Ins. Co. v. Apollo Enters.,*
      2009 Tex. App. LEXIS 8315 (Tex. App. Austin Oct. 29, 2009)............8, 9

*Turcotte v. Trevino,*
      499 S.W.2d 705, 723 (Tex. Civ. App. – Corpus Christi 1973, writ ref'd n.r.e.)...................................................................................12

**Statutes and Codes:**

TEX. CIV. PRAC. & REM. CODE §41.0105..........................1, 2, 3, 5, 6, 8, 9

TEX. CONST. art I, § 19...................................................................11

U.S. Constitution..........................................................................11

**Miscellaneous:**

Letter dated May 20, 2015 from the Honorable Andrew Bench, 196th Judicial District Court for Hunt County, Texas…………………………Exhibit A

# SUMMARY OF REPLY

The issue in this appeal is whether evidence of the amounts Medstar paid to Adrian Matte's medical providers and the contracts between Medstar and his providers is discoverable. The issue is not whether Civil Practice & Remedies Code Section 41.0105 applies to limit Matte's recovery or whether the amounts paid to Matte's medical providers represents the reasonable value of the services. Those issues are for the trial court in Hunt County to decide. This evidence is necessary for the fair adjudication of Defendant's defenses because without it, Defendant would be deprived of his constitutional due process right to be heard on the issues and present evidence in his defense.

The discussion regarding whether Section 41.0105 applies and the reasonable value of medical expenses is solely for the purpose of establishing that these issues are undecided, are the subject of sharp debate, and strong arguments exist that Texas law does not allow for the recovery of medical expenses in excess of the amount the medical providers accepted. These factors militate in favor of requiring the production of the requested information so as to allow the Hunt County trial court to decide the issues thus paving the way for appellate court

1

review of this important issue of first impression. In fact, because it lacks the ability to compel production of this information, the Hunt County trial court has postponed the trial of the case until this appeal has been completed. This strongly suggests that the Hunt County trial court wants this information in order to determine the admissibility of evidence of medical care expenses.

Boiled down to its essence, Medstar's goal is to prevent any Texas courts from deciding whether a plaintiff may recover more than the amounts Medstar pays to medical providers in full satisfaction of a plaintiff's debt. By concealing the amounts it pays to and its contracts with providers, Medstar effectively deprives Appellant of the right to be heard on the issue of whether Section 41.0105 applies to Medstar's business model or whether the amount Medstar and medical providers agree upon represents the reasonable value of the services. Concealing this information also deprives the trial court in Hunt County from deciding these issues and appellate courts from reviewing the trial court's decision.

Conspicuously absent from Appellee's Brief is any argument regarding any alleged harm associated with producing information to Appellant subject to a protective order. Neither Appellant nor his counsel

2

are competitors of Medstar, and thus, there is no danger that the information will be used to Medstar's competitive disadvantage. In fact, Medstar has produced this information subject to a protective order in the past. (RR 464-469). And given the importance of the information, the lack of harm to Medstar militates in favor of requiring the production of the information.

## ARGUMENT AND AUTHORITIES

### A. Medstar's business model is not a true factor and is designed to circumvent Section 41.0105 and *Haygood v. Escabedo.*

Medstar attempts cloak its business model into the broader "medical factoring industry" in an effort to conceal its true purpose. While the factoring industry in general is legitimate, Medstar's business is not a true factoring arrangement. It is a carefully designed scheme to circumvent Section 41.0105 and the Texas Supreme Court's decision in *Haygood v. Escabedo.* If successful, *Escabedo* and Section 41.0105 will become nullities.

In a true factoring arrangement, the factor purchases a business' accounts receivable and proceeds to attempt to collect on the account from the debtor with whom the factor has no pre-existing relationship. That is inherently an adversarial, debtor-collector relationship. Here, Medstar

3

interacted with Matte before purchasing his accounts. (Appellee's Brief at 10). This involves an agreement with Matte to seek repayment from third parties – the tort defendants. Unlike a true factoring arrangement, this is a collusive arrangement with the purpose of entrepreneurial profit.

Further distinguishing Medstar's business from true factoring arrangements is that Medstar and Matte's medical providers agreed to rates for services before those services were performed or any account existed. (CR 162). The medical providers then aver that the full list charges remain owed to the providers.[1] In other words, the medical providers know the amount they have accepted, but execute affidavits swearing that they are owed a larger amount. This is pure fiction writing. Most likely, this is because Medstar collaborates with medical providers in crafting the affidavits. (CR 331). This adds another layer of collusion. In addition to the collusion between Matte and Medstar, now the medical providers are complicit even though they no longer have any financial interest in Matte's recovery.

The tripartite collusion inherent in Medstar's business model and manipulation of evidence makes it clear that the object is to circumvent the

_____

[1] CR 78, 81, 84, 91, 99, 106, 113, 120, 127, 130

limitations set forth in Section 41.0105 and the Texas Supreme Court's holding in *Escabedo*. Collusive attempts to circumvent the law violate public policy. *Ranger Ins. Co. v. Ward*, 107 S.W.3d 820, 829 (Tex. App.--Texarkana 2003, pet. denied).

**B. The plain language of Section 41.0105 precludes the recovery of Medstar's commission or business profit margin, which are clearly not "medical or healthcare expense."**

In order to be recoverable, expenses must be "medical or healthcare expenses." TEX.CIV.PRAC.REM. CODE §41.0105. Medical or healthcare expenses are those that are paid or will be paid to a medical or healthcare provider. In *Escabedo*, the Texas Supreme Court held:

> "We agree with the court of appeals that this statute limits recovery, and consequently the evidence at trial, to expenses that *the provider* has a legal right to be paid….Thus, "actually paid and incurred" means expenses that have been or will be paid, and excludes the difference between such amount and charges *the service provider bills but has no right to be paid.*"

*Haygood v. De Escabedo*, 356 S.W.3d 390, 391 (Tex. 2011)(emphasis added).

Here, the difference between the amount Medstar paid Matte's providers and the list charges does not constitute "medical or healthcare expenses" because this amount is not and never will be paid to a medical provider. Rather, this amount constitutes Medstar's commission or

5

business profit margin, not "medical or healthcare expenses." It is undisputed that Matte's medical providers have no right to any additional payments. Thus, according to the plain language of Section 41.0105 and the holding in *Escabedo*, this amount is not recoverable.

Medstar contends that Section 41.0105 does not apply to their business model because Medstar does not pay the medical providers on Matte's behalf. However, Medstar admits that it reached agreements with Matte's medical providers to pay a reduced rate for services before any treatment was provided. (CR 162). This arrangement can only be described as paying Matte's medical providers for his benefit, or in other words, on his behalf. At the very least, the Hunt County trial court could interpret this arrangement as payment on Matte's behalf and only submit evidence of actual payments to the jury. Thus, evidence of the contracts and actual payments is necessary for a decision on this issue.

## C. Matte's contractual liability to Medstar does not make medical expenses that have not been and will not be paid to a medical provider recoverable.

As set forth above, according to the Texas Supreme Court, Section 41.0105 limits recovery to expenses that are paid or will be paid to a medical or healthcare provider. Medstar argues that Section 41.0105 does

6

not apply here because the rationale underlying the Texas Supreme Court's holding in *Escabedo* was to prevent the plaintiff from obtaining a windfall. Here, the argument goes, Matte will not obtain a windfall because he owes the medical providers' full list charges to Medstar. And semantically, Medstar contends that it will not receive a windfall because it expected to earn a profit all along. So according to Medstar, the identity of the beneficiary of the amount in excess of what the medical providers accepted (whether called a windfall or a profit) is the distinguishing factor.

However, Matte's obligation to repay Medstar has no connection to the amount he can recover in a tort lawsuit. As an example, if a jury finds that a plaintiff's medical expenses are unreasonably high and awards a lesser amount, that plaintiff is still obligated to pay his medical providers for their full charges. That plaintiff's separate contractual obligation to pay his providers does not compel an award for the full amount of the charges. The same result applies here. The fact that Matte obligated himself to pay Medstar an amount in excess of what his providers agreed to accept does not render that amount recoverable.

In addition, Medstar's argument is essentially that the legislature and the Texas Supreme Court prohibit a plaintiff from obtaining a windfall by

recovering an amount in excess of the amount paid or owed to medical providers, but allow such a recovery if the windfall is transferred to a third party in the form of business profit. Whether characterized as a windfall or profit, the amount in excess of what the providers accepted is not recoverable. If it were, juries will not be determining medical expenses, but instead, they will be deciding profits for a non-party lurking in the shadows.

### D. Medstar's assignment of Matte's medical providers' claims does not transform Medstar into a medical provider.

Medstar acknowledges that the Texas Supreme Court held that Section 41.0105 limits a claimant's recovery to medical expenses the provider has a legal right to be paid. (Appellee's Brief at 20). However, Medstar appears to contend that by virtue of the assignments from Matte's medical providers, Medstar is transformed into a medical provider for purposes of interpreting Section 41.0105. However, although an assignee stands in the shoes of an assignor, an assignee of a healthcare provider does not *become* a healthcare provider. *Tex. Mut. Ins. Co. v. Apollo Enters.*, 2009 Tex. App. LEXIS 8315 (Tex. App. Austin Oct. 29, 2009)(not designated for publication). Further, the common law principle that an assignee stands

8

in the shoes of an assignor does not apply where it would frustrate the legislature's intent as reflected in statutes. *Id.*

With respect to Section 41.0105, the Texas Supreme Court has held that a claimant's recovery is limited to medical expenses that have been or will be paid to a medical or healthcare provider. Because Medstar's assignments do not transform it into a medical provider, Matte cannot recover amounts owed to Medstar. Further, the common law principle that an assignee stands in the shoes of an assignor does not apply here because it would frustrate the legislature's intent to limit recovery to amounts paid or owed to medical providers, not entrepreneurial financiers.

### E. The amounts Medstar paid Matte's providers and the contracts between Medstar and those providers are relevant to determine the reasonable value of medical services.

The rule the Texas Supreme Court set out in *Escabedo* is that a plaintiff is entitled to recover the lesser of the reasonable value of medical services or the amount actually paid or the amount the medical provider is legally entitled to recover. Thus, even if Section 41.0105 does not apply to a factoring arrangement, the evidence reflecting the amount Matte's medical providers agreed to accept is necessary for the fair adjudication of the reasonable value of the services provided.

9

Medstar contends that Matte's medical providers' acceptance of a reduced rate has no bearing on the reasonable value of the services. Rather, Medstar argues that the reduced rate simply reflects the amount the providers are willing to accept to avoid the uncertainties and risk associated with collections. However, the timing of the transactions undermines this argument.

As set forth above, Medstar and Matte's providers agreed upon a reduced rate before any treatment was provided. (CR 162). The providers were under no compulsion to treat Matte if they thought the proposed rates were unreasonable. In other words, it is safe to presume that a for-profit concern will only provide goods and services if the compensation is sufficient to cover costs plus a reasonable profit. Otherwise, there is no reason to provide the goods and services. The fact that Matte's medical providers provided treatment knowing the amount they would be paid is at least some evidence that the agreed upon rates were reasonable. *Galaviz v. C.R. Eng. Inc.*, 2012 U.S. Dist. LEXIS 53866, *8-9 (W.D. Tex. Apr. 17, 2012); *Dodd v. Cruz*, 223 Cal. App. 4th 933, 942 (Cal. App. 2d Dist. 2014)(not designated for publication).

10

## F. Medstar's proposed stipulation that it paid a reduced rate does not negate the need for payment and contract information.

Medstar argues that it will stipulate that it paid a reduced rate for Matte's medical accounts, and thus, the issue is preserved for appellate review. This argument ignores the other reasons payment and contract information is necessary. For example, if the Hunt County trial court agrees with Appellant's arguments that only the paid amount is admissible, there is no evidence to submit to the jury without this information.[2] Second, if the trial court decides that both the full amount of the providers' charges and the amount actually paid should be submitted to the jury to determine the reasonable value of the services, payment and contract information is obviously necessary. Thus, Medstar's proposed stipulation does not negate the need for this information.

## G. Denying Appellant access to the requested information would deprive him of his due process right to be heard and present evidence.

Both the fourteenth amendment to the U.S. Constitution and article 1, section 19 of the Texas Constitution provide that a person shall not be deprived of life, liberty, or property without due process of law.

---

[2] This is a scenario that Medstar has apparently not anticipated. If the trial court takes this approach, it could result in no recovery of medical expenses at all.

11

Fundamental to the concept of due process is the right to be heard. *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S. Ct. 1983, 32 L. Ed. 2d 556, 569 (1972). The right to be heard assures a full hearing before a court having jurisdiction of the matter, the right to introduce evidence at a meaningful time and in a meaningful manner, and to have judicial findings based upon that evidence. *Perry v. Del Rio*, 67 S.W.3d 85, 92 (Tex. 2001); *Turcotte v. Trevino*, 499 S.W.2d 705, 723 (Tex. Civ. App. -- Corpus Christi 1973, writ ref'd n.r.e.). It includes also an opportunity to cross-examine witnesses, to produce witnesses, and to be heard on questions of law. *In the Interest of BMN*, 570 S.W.2d 493, 502 (Tex. Civ. App. -- Texarkana 1978, no writ).

If Appellant is denied access to the information requested, he will be deprived of his right to present evidence to the Hunt County trial court in support of the argument that Matte is not entitled to recover amounts in excess of the amount paid to the providers. Appellant will also be deprived of the right to present evidence of the reasonable value of medical services performed on Matte. Muted by the absence of evidence, Appellant will not be heard. And Appellant will be deprived of the right to have judicial findings based upon the evidence. Accordingly, Appellant is entitled to the requested as a matter of fundamental due process.

In fact, because it lacks the ability to compel production of this information, the Hunt County trial court has postponed the trial of the case until this appeal has been completed. (Exhibit A). This strongly suggests that the Hunt County trial court wants this information in order to determine the admissibility of evidence of medical care expenses.

## CONCLUSION AND PRAYER

Evidence of the amounts Medstar paid to and contracts with Matte's medical providers is relevant and necessary to a fair adjudication of Appellant's defenses against Matte's damage claims in the Hunt County Action. If Appellant is denied access to this evidence, he will be deprived of the ability to present it to the trial court and jury in the Hunt County Action and consequently, to the court of appeals if necessary in violation of fundamental due process rights. This evidence is unavailable from any other source. Accordingly, the trial court abused its discretion in granting Medstar's Objections, Motion To Quash and Motion For Protective Order.

Respectfully submitted,


/s/Frank G. Cawley
**FRANK G. CAWLEY**
State Bar No. 24006978
**Whitehurst & Cawley, L.L.P.**
4560 Belt Line Road, Suite 200
Addison, Texas 75001
972/503-5455 Telephone
972/503-6155 Facsimile
Email: fcawley@whitehurstlaw.com

Attorneys for Appellant

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was forwarded to all counsel of record pursuant to the Texas Rule of Appellate Procedure 9.5 on the 21st day of May, 2015.

Kirk L. Pittard
KELLY, DURHAM & PITTARD, L.L.P.
1005 Heights Boulevard
Houston, Texas 77008
Email: kpittard@texasappeals.com

Joe K. Crews
CREWS LAW FIRM PC
701 Brazos, Suite 900
Austin, Texas 78701

Donald L. Crook, Jr.
WAYNE WRIGHT, L.L.P.
5707 Interstate Ten West
San Antonio, Texas 78201
Email: dcrook@waynewright.com


/s/Frank G. Cawley
Frank G. Cawley

## CERTIFICATE OF COMPLIANCE

As required by Texas Rule of Appellate Procedure 9.4(i)(3), I certify that there is a total of 3240 words in the foregoing computer-generated document.

/s/Frank G. Cawley
Frank G. Cawley



# 196TH JUDICIAL DISTRICT COURT

P.O. BOX 1097 · GREENVILLE, TEXAS 75403-1097
(903) 408-4190 · FAX: (903) 408-4189

**J. ANDREW BENCH**
JUDGE

**JULIE DEARY**
COURT COORDINATOR

May 20, 2015

**Via Facsimile (972) 503-6155**
Mr. Frank G. Cawley
4560 Belt Line Road, Suite 200
Addison, Texas 75001

**Via Facsimile (210) 734-9965**
Mr. Donald L. Cook, Jr.
5707 Interstate Ten West
San Antonio, Texas 78201

Re:  Cause No. 78573; Adrian Matte v. Atheer Amanuel Hanna, Edmond Amanuel Hanna, and Babylon Transportation, Inc.; In the 196th District Court, Hunt County, Texas

Dear Gentlemen,

After considering the argument and authorities of counsel, the Court has decided to continue the trial of this case until such time as the Appeal of the Protective Order issued in Travis County, and currently before the Third Court of Appeals, has been fully resolved. Due to the unique factual circumstances of this case, and the Court's inability to compel the production of documents relevant to the alleged damages in this case, a jury trial without an opinion on the relevance of the Medstar Contracts would be a waste of judicial resources. Once the issue has been finally resolved, the Court will immediately set the case for trial. Counsel for the Defendant is directed to prepare an order consistent with this letter.

Sincerely,

J. Andrew Bench
Judge, 196th Judicial District Court

JAB/jd

EXHIBIT
A