**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff, Appellee,**

v.

**TITO CASTRO CONSTRUCTION, INC., Defendant, Appellant.**

No. 82–1817.

United States Court of Appeals, First Circuit.

Argued June 4, 1984.

Decided Aug. 17, 1984.

Charles A. Cuprill-Hernandez, Ponce, P.R., for defendant, appellant.

Gabriel Hernandez Rivera, Old San Juan, P.R., with whom Feldstein, Gelpi & Hernandez, Old San Juan, P.R., Thomas Brooks, and Thomas A. Rose, Washington, D.C., were on brief, for plaintiff, appellee.

Before COFFIN and BREYER, Circuit Judges, and DOYLE,** Senior District Judge.

BREYER, Circuit Judge.

Between September 1976 and March 1978 the Banco Credito y Ahorro Ponceno made several secured loans to appellant, the Tito Castro Construction Corp. The loans amounted to $3,329,825.70. The interest rate (on all but one) was a variable rate, described in the loan documents as "prime plus one percent." On March 31, 1978, the bank failed. The Federal Deposit Insurance Corporation became its receiver and purchased the loans to Tito Castro. *See* 12 U.S.C. § 1823. Tito Castro stopped paying back the loans, apparently because of its own bankruptcy; and, in August 1981 the FDIC brought this suit seeking foreclosure on Tito Castro's security. FDIC wishes to sell the collateral to satisfy a debt, which its complaint says amounts to $3,329,825.70 in principal and $357,450.95 in interest. Tito Castro defended by noting that Puerto Rico Civil Code Article 1652, 31 L.P.R.A. § 4594 (applicable to individuals and certain closely held corporations) provides that lenders cannot collect any interest on *usurious* loans—loans defined as those with "any greater rate of interest than is allowed by this chapter." Article 1652 provides a further penalty for usurious loans by requiring that the borrower pay 25 percent of the principal to the Commonwealth of Puerto Rico. Tito Castro argued—both here and in the district court—that the bank's interest rates were usurious.

Tito Castro pointed out that the "rate of interest ... allowed by this chapter," *i.e.*, the maximum nonusurious rate, is determined by a Commonwealth regulatory board which from time to time sets and adjusts a ceiling rate of interest. 10 L.P.R.A. § 998a. Tito Castro conceded that an interest rate of "prime plus one percent" was below this board-set ceiling from the time it borrowed the money until the time the bank failed. Nonetheless, for a brief period in 1978 the rate of prime plus one percent would have exceeded both the board's ceiling in effect at that time, and the ceiling in effect when the loans were executed. And, these facts, says Tito Castro, make the loans usurious, prevent collection by the FDIC of any interest on the loans, and require payment of 25 percent of the principal to the Commonwealth of Puerto Rico, rather than to the FDIC.

The FDIC has made three arguments in response. First, it says that the interest rate was never usurious in fact. Insofar as the loan formula might have led to a rate above the legal ceiling, the FDIC did not seek to collect the excess. Second, the FDIC said that, as a matter of Puerto

** Of the Western District of Wisconsin, sitting by designation.

Rican·law, a loan contract is not 'usurious' when the interest rate is not usurious at the time the contract is made. Subsequent events, it adds, such as prime rate increases, cannot render such a contract usurious at a later date—at least not here where the lender likely had no usurious intent. Third, the FDIC argued that, in any event, federal law, not the law of Puerto Rico, governs in an FDIC foreclosure action. And, since Puerto Rico's law would frustrate the FDIC's efforts to collect amounts due on the loans, the courts must ignore Puerto Rico's usury statutes. The federal district court accepted the second and third of these arguments. 548 F.Supp. 1224. Thus, it found in the FDIC's favor. On this appeal, we need not consider the difficult questions that the second and third arguments raise, for we believe that the FDIC's first argument—that there has been no usury in fact—is correct and provides sufficient support for the district court's judgment.

None of the key facts is in dispute. The FDIC points to three sets of facts that support its position. In the FDIC's words: [1] Banco "never charged or collected any interest in excess of the legal rates, [2] the defendant [Tito Castro] ... never paid any interest to the FDIC, and [3] the amounts [that the FDIC] claimed ... in this action were not in excess of the legal rates." Tito Castro points to three other facts, namely, (a) the FDIC's own record of the loans showed a rate of interest slightly above the legal rate in the summer of 1978, (b) the FDIC submitted a "proof of claim" in Tito Castro's bankruptcy proceeding that sought unlawfully large amounts of interest and (c) the FDIC sent Tito Castro a letter in June 1979 asking for an 'unlawfully large' amount of interest (about $550,-000).

In our view, these three latter facts do not show an effort to charge or collect a usurious rate of interest. The FDIC's loan record is apparently an internal document. The record of this case suggests that the "proof of claim" and collection letter were made and sent routinely, apparently without awareness of the usury problem. But,

in any event, the matter is settled in the FDIC's favor by another section of Puerto Rico's Civil Code, Article 1654, 31 L.P.R.A. § 4596.

Article 1654 states that

Any person who ... before the defense of usury is interposed by the borrower in an action on the contract, effectually relinquishes the right to any interest or discount or value reserved in violation of this chapter, shall be relieved from further forfeiture, penalty or punishment, and the contract from the date of the ... written relinquishment shall be valid and effectual.

The Supreme Court of Puerto Rico has recently interpreted this article to mean what it says. In a case very similar to the present one, *Perdomo Alvarez v. Sucesion de Matilde Cintron Salgado*, 83 J.T.S. 36 (March 24, 1983), the plaintiff had loaned the defendant money at a 'usurious' ten percent interest rate. The defendant defaulted; the plaintiff brought a foreclosure action; and, in that action plaintiff asked for the principal plus a lawful *nine* percent interest. The Commonwealth Supreme Court rejected defendant's Article 1652 usury defense on the ground that the plaintiff's complaint sought only nine percent interest. Moreover, the plaintiff filed her complaint before the defendant had paid any usurious interest or raised a usury defense. The Supreme Court refused to apply Article 1652's penalties; it ordered the defendant to pay the principal plus nine percent interest.

The undisputed facts to which the FDIC points show that it, like the *Perdomo Alvarez* plaintiff, complied with Article 1654's requirements. Like the *Perdomo Alvarez* plaintiff, the FDIC's complaint asked for an amount that includes only 'below-ceiling' interest. The complaint sought $3,329,-825.70 in principal and $357,450.95 in interest. In its "Answer to the Second Interrogatory," which was part of the record before the district court, the FDIC provided a schedule explaining how it arrived at the interest amount of $357,450.95. The sched-

ule shows that in each of the respective notes, the FDIC charges either 9.25 percent or 9.50 percent—amounts within the usury ceilings. (Tito Castro based its claim of usury on an FDIC demand of about $550,-000 in interest, not $357,450.95.) Further, Tito Castro made no usurious interest payment. Finally, the FDIC filed the complaint relinquishing any claim to usurious interest payments before Tito Castro raised the usury defense. Thus, the undisputed facts show that the FDIC does not fall within the penalty provision of Article 1652. *Perdomo Alvarez v. Sucesion de Matilde Cintron Salgado, supra; Planned Credit of Puerto Rico, Inc. v. Page,* 103 D.P.R. 245, 251 (1975). And, the FDIC can collect from Tito Castro the principal and interest that it seeks in its complaint.

The judgment of the district court is *Affirmed.*