732 S.W.2d 1 (1986)
FEDERAL SAVINGS AND LOAN INSURANCE CORP., Receiver for Mainland Savings Association, Appellant,
v.
Don M. KENNEDY, Appellee.
No. 01-86-0472-CV.
Court of Appeals of Texas, Houston (1st Dist.).
December 30, 1986.
Rehearing Denied June 18, 1987.
*2 Taylor M. Hicks, J. Scott Carothers, Houston (O. Clayton Lilienstern, Andrews & Kurth, Houston, Harry W. Quillian, Acting Gen. Counsel, Paul W. Grace, David G. Eisenstein, Office of General Counsel Federal Home Loan Bank Board, Washington, D.C., of counsel), for appellant.
Dana G. Kirk, Kyle R. Sears, Kirk & Carrigan, Houston, for appellee.
Before EVANS, C.J., and JACK SMITH and WARREN, JJ.

OPINION
JACK SMITH, Justice.
The threshold question in this case is whether the appointment of Federal Savings & Loan Insurance Corporation (FSLIC) as receiver for the defendant, Mainland Savings Association, after the entry of judgment against Mainland Savings but during the period while the trial court still retained plenary control over the case, gave FSLIC the exclusive power and authority to readjudicate the issues determined by the judgment. We hold that the trial court's judgment was final in the sense that it was enforceable as a legal determination of the parties' rights, and that FSLIC has the same but no greater right than Mainland Savings to challenge the judgment on this appeal.
Don M. Kennedy brought this action against Mainland Savings in December 1985, to recover a $2 million certificate of deposit, which he had pledged as collateral in a real estate transaction with Mainland Savings. Kennedy asserted that Mainland Savings had breached its agreement to provide construction and permanent financing for the transaction and that it had wrongfully refused to return his $2 million deposit. Among other theories of recovery, Kennedy alleged breach of contract, conversion, fraud, and violation of the Deceptive Trade Practices Act.
The case was tried on its merits in March 1986, and a jury found in Kennedy's favor on special issues submitted on his theories of conversion, breach of contract, and deceptive trade practices. The parties stipulated the amount of actual and exemplary damages, which were to follow such issues. On March 12, 1986, the court entered judgment on the verdict, awarding Kennedy *3 $2,200,000 as actual damages and $100,000 as exemplary damages, plus $80,000 as attorney's fees. The judgment further specified that the $2 million certificate of deposit in the court's registry would be disbursed to Kennedy, together with accrued interest, in partial satisfaction of the judgment.
On April 4, 1986, FSLIC was appointed receiver for Mainland Savings. Shortly thereafter, Mainland Savings filed a plea of intervention, a motion for new trial, and a motion for judgment n.o.v. in this case, which the trial court denied. The court also denied Mainland Savings' motions to set aside the judgment and the court's orders relating to its enforcement. FSLIC also filed a petition for removal to federal district court, which was later remanded.
In its first two points of error, FSLIC contends that when it was appointed receiver for Mainland Savings, it acquired the exclusive power and authority to adjudicate all assets or claims against Mainland Savings, and that it also had the right to readjudicate Kennedy's claim with respect to the $2 million certificate of deposit. In support of this contention, FSLIC relies upon 12 U.S.C. secs. 1464(d)(6)(C), 1729(d) (1984), and cites numerous cases holding that the courts are prohibited from adjudicating claims pending at the time of its appointment as receiver. See North Mississippi Savings & Loan Association v. Hudspeth, 756 F.2d 1096, 1103 (5th Cir. 1985).
We recognize the general proposition enunciated in Hudspeth, that the courts may not adjudicate claims that were not finally decided before FSLIC was appointed receiver. But neither Hudspeth, nor any of the other authorities cited by FSLIC, support FSLIC's contention that it has the power to readjudicate claims, after those claims have been determined by a court's final judgment.
In this case, the trial court entered a final judgment on the jury's verdict, which determined that Kennedy was entitled to the $2 million certificate of deposit, and that Kennedy had been damaged in the stipulated amounts because of Mainland Savings' wrongful conversion of that certificate. The judgment fully adjudicated all issues in the case, and expressly provided that all relief not expressly therein granted was denied.
At the time FSLIC was appointed receiver for Mainland Savings, the court's judgment was final "for the purposes of issue and claim preclusion," notwithstanding that the judgment was yet appealable and subject to modification or vacation by the trial court. See Scurlock Oil Co. v. Smithwick, 724 S.W.2d 1, 30 Tex.Sup.Ct.J. 74, 78 (1986) (overruling Texas Trunk Railroad Co. v. Jackson, 85 Tex. 605, 22 S.W. 1030, 1031 (1893)). As long as the judgment continues in effect, the issues determined therein may not be relitigated. Martin v. Phillips Petroleum Co., 455 S.W.2d 429, 437 (Tex.Civ.App.-Houston [14th Dist.] 1970, no writ). If the judgment is ultimately affirmed, affirmance neither alters the parties' rights, nor affects their application from the time they were determined by the trial court. Horlock v. Horlock, 593 S.W.2d 743, 745 (Tex.Civ.App.- Houston [1st Dist.] 1979, writ ref'd n.r.e.).
We, accordingly, hold that when FSLIC was appointed receiver, it did not have the right to relitigate Kennedy's claim and that it simply stepped into the shoes of Mainland Savings, having the same but no greater rights than Mainland to challenge the court's final judgment. See Tosco Corp. v. Federal Deposit Insurance Corp., 723 F.2d 1242, 1247 (6th Cir.1983). In reaching this holding, we reject FSLIC's argument that this decision will unnecessarily hamper its receivership functions in reorganizing, operating, or dissolving Mainland Savings.
We overrule the first two points of error.
In its third point of error, FSLIC contends that the trial court erred in submitting special issues 4, 5, and 6, in that there was no evidence of an enforceable contract to provide construction and permanent financing. The appellant's failure to file a timely objection to the submission of special issues 4, 5, and 6 precludes review of the submission. Hall v. Rogers, 620 *4 S.W.2d 217, 220 (Tex.App.-Waco 1981, no writ). While the appellant stated that it had already made evidentiary objections on all of the contract claims, this was not sufficient to preserve error. An objection to a charge must be made distinctly and specifically. Id. at 220.
In its fourth point of error, the appellant argues that the trial court erred in entering judgment in favor of the appellee in that there was insufficient evidence to support the jury findings of an enforceable contract.
We find that there was legally sufficient evidence to support the jury's finding of Mainland Savings' agreement to provide construction and permanent financing.
The record shows that Mainland Savings had foreclosed on an undeveloped tract of land known as Greencrest. The original purchase price of the property was $3,862,000, but its appraised value was only $1,273,000. Kennedy testified that he had purchased Greencrest from Mainland upon its agreement to provide the construction and permanent financing of the future construction of an apartment complex. On September 11, 1985, he submitted his application for a non-recourse loan in the amount of $3,862,000, and on the following day, he gave Mainland Savings his promissory note for that amount, secured by a deed of trust on Greencrest.
Under the terms of his loan application, Kennedy was required to provide an additional $2 million certificate of deposit to Mainland Savings as collateral. That was arranged through a related transaction between Mainland Savings and Kennedy, whereby Kennedy purchased acreage in San Antonio known as Durango tract for $12 million, the full amount of the purchase price being loaned by Mainland Savings, and Kennedy received a $2 million commission on the sale, which he used to purchase the $2 million certificate of deposit. After Mainland Savings' loan committee refused to approve Kennedy's application for construction and permanent financing on Greencrest, Kennedy asked for a release of the certificate of deposit and the rescission of the Greencrest transaction. He also made an offer to substitute the Durango tract as collateral, in lieu of the $2 million certificate of deposit, which Mainland Savings refused. This suit resulted.
Mainland Savings contends that the parties' oral agreement regarding additional financing contemplated a lien or mortgage on real estate, and therefore is unenforceable under the statute of frauds. See Edward Scharf Associates, Inc. v. Skiba, 538 S.W.2d 501, 502 (Tex.Civ.App.-Waco 1976, no writ); 21 Turtle Creek Square, Ltd. v. New York State Teachers' Retirement System, 425 F.2d 1366, 1371 (5th Cir.1970).
We overrule FSLIC's argument regarding the statute of frauds, because Kennedy's suit was not brought to enforce Mainland Savings' oral commitment to make the loan, but rather to establish the underlying inducement for his pledge of the $2 million certificate of deposit. Thus, Kennedy's testimony about his agreement with Mainland Savings to provide construction and permanent financing does not violate the statute of frauds. See Young v. Gardner, 507 S.W.2d 250, 262 (Tex.Civ. App.-Houston [1st Dist.] 1974, writ ref'd n.r.e.). Neither does the parol evidence rule constitute a valid basis for excluding the testimony, which was received in the trial court over Mainland Savings' objection. Mainland Savings' agreement to provide construction and permanent financing was an independent oral agreement, made as an inducement to Kennedy to pledge the $2 million certificate of deposit. See Seigler v. Ginther, 680 S.W.2d 886, 889 (Tex. App.-Houston [1st Dist.] 1984, no writ). The terms of that oral agreement did not vary or contradict the terms of the parties' agreement with respect to the Greencrest transaction, which although related to the written instrument, was one whose subject matter might be dealt with separately by the parties. See Garza v. Garza, 371 S.W.2d 934, 936 (Tex.Civ.App.-Austin 1963, no writ).
We also overrule FSLIC's ultra vires contention, that the agreement made by Mainland Savings' managing officer to provide construction and permanent financing *5 was unenforceable because it was made without the approval of Mainland Savings' loan committee. Loan commitments are clearly within the statutory authority of a bank or financial institution; the ultra vires doctrine applies when the bank, through its officers, enters into a contract that exceeds its statutory authority. Jones v. First State Bank, 145 S.W.2d 681, 683 (Tex.Civ. App.-Amarillo 1940, no writ).
We overrule the appellant's points of error three and four.
In its fifth, sixth, and seventh points of error, FSLIC contends that the trial court erred in excluding certain evidence relating to the jury's finding of unconscionability, and argues that there is no evidence to support the jury's finding on that issue. We do not consider these points, because the trial court's judgment may be sustained on the jury's findings to the issues submitted on breach of contract and conversion, and on the parties' stipulations with respect to the damages related to those issues.
Appellant's points of error five, six, and seven are overruled.
In its eighth point of error, FSLIC contends that the trial court erred in striking Mainland Savings' counterclaim filed four days before trial without leave of court.
Mainland Savings' counterclaim set up completely new causes of action, and Kennedy duly asserted his claim of surprise. There is no showing that the trial court abused its discretion in refusing to allow Mainland to file the counterclaim. See Hardin v. Hardin, 597 S.W.2d 347, 349 (Tex.1980); Missouri-Kansas-Texas Railroad Co. v. Alvarez, 703 S.W.2d 367, 370 (Tex.App.-Austin 1986, writ ref'd n.r.e.).
We overrule FSLIC's eighth point of error.
FSLIC contends, in its ninth point of error, that the excluded evidence was relevant and material to the conversion issue of whether Mainland Savings acted willfully and knowingly or under circumstances showing a lack of good faith in refusing to return the certificate of deposit to Kennedy. The excluded evidence pertained to the prior separate Durango transaction. That transaction, although relevant to shed light on Mainland Savings' reasoning, was not material to the issue of good faith of Mainland Savings in the conversion of the certificate of deposit. The jury, as factfinder, determined that Kennedy was entitled to the return of the certificate of deposit, and that Mainland Savings wrongfully refused to return the certificate when demanded. The excluded evidence was, for the most part, cumulative of evidence showing the parties' entire transaction, and did not constitute a separate basis justifying Mainland Savings' conduct. We find the error, if any, was harmless.
We overrule point of error nine.
In its tenth and eleventh points of error, FSLIC challenges the legal sufficiency of the evidence to support the jury's finding that Mainland Savings converted the certificate of deposit. Under these points, in addition to the arguments heretofore discussed regarding the enforceability of Mainland Savings' agreement to provide construction and permanent financing, FSLIC contends that Mainland Savings' refusal to return the certificate of deposit was an exercise of its contractual rights under the collateral pledge agreement. Arguing that Kennedy did not have title to the funds on deposit, and that Mainland Savings had a right to offset against the deposit any indebtedness owed by the depositor to the bank, FSLIC asserts that the funds on deposit were not identified as a specific chattel that could be the subject of an action for conversion.
Contrary to FSLIC's contention, there was proof that Kennedy was the owner of and entitled to possession of the property, so that there could be a conversion of the property even though he did not have title. Gardner v. Jones, 570 S.W.2d 198, 201 (Tex.Civ.App.-Houston [1st Dist.] 1978, no writ). Kennedy's claim was simply that when Mainland Savings refused to perform its agreement to provide construction and permanent financing, he was entitled to rescind the agreement, and Mainland Savings was no longer entitled to retain *6 the certificate of deposit that he had pledged as security. The jury found all essential facts in favor of Kennedy's claim, and we find legally sufficient evidence to support its findings.
We, accordingly, overrule points of error 10 and 11.
In its twelfth point of error, the appellant asserts that the trial court erred in submitting special issue 3 because there was no evidence that the appellant acted willfully and knowingly or showed a lack of good faith. Appellant did not object to the trial court's submission of the special issue, and the point is waived for appeal. Hall v. Rogers, 620 S.W.2d at 220.
In its thirteenth point of error, FSLIC challenges the legal sufficiency of the evidence to support the jury's finding that Mainland Savings acted willfully and knowingly, or under circumstances showing a lack of good faith, in refusing to return the certificate of deposit to Kennedy. Under the factual circumstances generally outlined above, we find the evidence is legally sufficient to support the jury's verdict on this issue.
The appellant's twelfth and thirteenth points of error are overruled.
In its fourteenth and fifteenth points of error, FSLIC contends that the trial court erred in overruling Mainland Savings' objection to the introduction of evidence of Kennedy's damages relating to construction and permanent financing. Specifically, it asserts that such evidence was wholly speculative, and that the evidence is legally insufficient to support the jury's finding of damages. Under these points, FSLIC argues that the trial court erroneously permitted Kennedy to speculate about the amount of damages he would suffer as a result of Mainland Savings' failure to provide construction and permanent financing. FSLIC contends that there was no evidence of any agreement between the parties regarding the amount of loans, the nature of improvements, or the amount of Kennedy's fees with respect to the particular project. We need not discuss this contention at length, because there is evidence that supports the jury's finding on damages, as reconciled by the parties' stipulation, upon the theory of conversion. It is undisputed that Kennedy pledged the $2 million certificate of deposit as collateral, and that the jury found that Mainland Savings was liable for conversion. The measure of damages in a conversion action is usually the value of the property converted, when and where it was converted. Prewitt v. Branham, 643 S.W.2d 122, 123 (Tex.1982).
We overrule points of error 14 and 15.
The judgment of the trial court is affirmed.