**FEDERAL DEPOSIT INSURANCE CORPORATION, Appellant,**

v.

**F & A EQUIPMENT LEASING et al., Appellee.**

No. 05–89–00487–CV.

Court of Appeals of Texas, Dallas.

Sept. 24, 1990.

Rehearing Denied Nov. 7, 1990.

Bill W. Bailey, Lancaster, J. Roderick Price, Midland, for appellant.

Howard C. Rubin, Dallas, for appellee.

Before ENOCH, C.J., and WHITHAM and WHITTINGTON, JJ.

## OPINION

WHITTINGTON, Justice.

The Federal Deposit Insurance Corporation (FDIC), in its corporate capacity, and successor in interest to First Consolidated Bank—Pleasant Run, N.A. (FCB), appeals a judgment rendered against FCB in favor of F & A Equipment Leasing, Kenneth W. Arterbury, Danny Frazell,[1] Bobby R. Wilson, and Vernon F. Wilson (the Wilsons). The FDIC became a party to these proceedings only after appeal had been perfected to this Court by FCB and was the result of FCB's being declared insolvent October 20th, 1989, with the FDIC being appointed its receiver. Following the reasoning of this Court in *FSLIC v. Stone*, 787 S.W.2d 475 (Tex.App.—Dallas 1990, n.w.h.) and *FDIC/Manager Fund v. Larsen*, 793 S.W.2d 37 (Tex.App.—Dallas 1990, n.w.h.), we hold that F & A's claims are barred as a matter of law. Accordingly, we reverse the trial court's judgment and render judgment in favor of the FDIC on F & A's claims. We also vacate that part of the judgment whereby it denies the note-holders' right to collect on the promissory notes and remand that issue to the trial court for further consideration in light of this opinion.

## STATEMENT OF FACTS

This is an appeal from a judgment rendered on a jury verdict. The case was initiated by FCB who sued F & A and the Wilsons for the collection of three promissory notes executed by F & A and later assumed by the Wilsons. The subject promissory notes were collateralized by certain earth moving equipment. Possession of the equipment collateral was delivered by F & A, the original debtors, to the Wilsons when they assumed the subject promissory notes. No additional financing statements were filed. The equipment collateral subsequently "disappeared" after being transferred to the Wilsons.

F & A defended FCB's lawsuit and countersued, alleging that FCB engaged in deceptive trade practices, was negligent, committed fraud, impaired their collateral, and breached a fiduciary duty to F & A. The Wilsons answered FCB's lawsuit but did not appear for trial.

It was alleged at trial that F & A had established a trust relationship with FCB. There was testimony that F & A requested that the credit history of the Wilsons, the people assuming liability on the notes, be investigated thoroughly. Don Beers, former vice president of FCB, advised F & A that the Wilsons were ready to assume the notes but that F & A would remain liable on the debt to FCB. Beers told F & A that the Wilsons "had a little slow pay" but that they paid their bills. F & A contended that FCB was negligent and breached its duty to F & A by not truthfully notifying them concerning the Wilsons' lack of creditworthiness and poor credit history. As stated earlier, after the equipment was transferred to the Wilsons, it disappeared. When FCB could not collect from the Wilsons on the notes, it pursued a judgment against F & A.

---

1. All of the appellees, except for Bobby and Vernon Wilson, will be collectively referred to as "F & A" unless otherwise indicated.

The trial court entered judgment on the verdict in favor of F & A and against FCB on December 29, 1988. The judgment was for $212,280, being made up of $75,800 compensatory damages, $75,000 punitive damages for gross negligence or deceptive trade practices,[2] $5,055 statutory penalties for usury on promissory note number two, $2,000 statutory penalties for usury on promissory note number three, $1,875 attorneys' fees on usury issues, $36,100 attorneys' fees on other issues, and $16,450 prejudgment interest. The jury found that FCB breached a fiduciary duty to F & A; however, no amount of damages was ascertained. F & A obtained a finding that FCB had breached a contract[3] with F & A and had impaired F & A's right to the collateral. The court, based on the foregoing findings, discharged the subject promissory notes with regard to F & A. The trial court also entered judgment in favor of FCB against the Wilsons[4] for $87,522.83 on the subject promissory notes and for attorneys' fees of $24,093.25. FCB filed a motion to modify judgment and a motion for new trial, both of which were denied by the trial court. Appeal was perfected by FCB on March 29, 1988, and appellate briefing was completed on September 11, 1989.

On October 20, 1989, while the appeal was awaiting submission to this Court, FCB was declared insolvent and the FDIC was appointed receiver. The FDIC, in its corporate capacity, subsequently purchased selected assets from the receiver, including the promissory notes at issue in this matter. The FDIC thereby became the true party in interest in this appeal. 12 U.S.C. § 1823 (1989). The FDIC was substituted as plaintiff and granted leave to file a supplemental brief, which was filed April 17, 1990. F & A also filed a supplemental brief on May 1, 1990.

## POINTS OF ERROR

In FCB's original appellate brief, eight points of error were briefed. They are: (1)

there was no evidence that FCB impaired F & A's rights to the collateral; (2) the trial court erred (a) in ruling that FCB impaired F & A's rights to the collateral because the promissory notes contained express waivers of impairment; (b) in overruling F & A's motion for new trial because the evidence is factually insufficient that FCB impaired F & A's rights to the collateral; (c) in failing to submit jury questions on whether F & A was a "consumer" with regard to the services performed by FCB in connection with the transfer of the collateral to the Wilsons; (d) in awarding judgment to F & A and discharging the promissory notes based upon the defense of impairment of collateral for the reason that such defense is available only to sureties; (e) in awarding judgment to F & A for attorneys' fees based upon the jury's finding of gross negligence on the part of FCB; (f) in awarding judgment to F & A for actual damages which included loss of the collateral and in denying recovery to FCB on the promissory notes as a result of impairment of collateral; and lastly (g) in denying recovery to FCB on its cause of action against F & A because of the discharge of the subject promissory notes as a result of collateral impairment.

By supplemental brief, the FDIC, as the true party in interest, advanced four additional points of error, designated points nine, ten, eleven and twelve. They are: (9) substitution of the FDIC as the true party in interest renders all evidence of matters extraneous to banking records to have been improperly admitted as a matter of law; (10) F & A is not entitled to judgment against the FDIC for fraud, deceptive trade practices and usury, or to awards of punitive damages and attorneys' fees as a matter of federal law; (11) the FDIC is entitled to raise for the first time on appeal all rights and remedies available to it in the trial court even though entry of judgment preceded the receivership by the FDIC;

---

2. The trial court's judgment is unclear whether the punitive damage award was based on the jury's finding of gross negligence or the finding of deceptive trade practices.

3. No damages were awarded for breach of contract.

4. The Wilsons have not filed a brief on appeal.

and (12) the defenses of gross negligence, breach of fiduciary duty, and impairment of collateral cannot be sustained against the FDIC and the notes should not have been discharged. We sustain the FDIC's points of error nine, ten, eleven, and twelve and reverse and render judgment in favor of the FDIC on F & A's claims. The FDIC's claim seeking collection of the subject promissory notes against F & A is vacated and remanded for new trial.

## POINTS OF ERROR NINE, TEN, AND ELEVEN

In points of error nine, ten, and eleven, set forth in their supplemental brief, the FDIC contends that: (9) substitution of the FDIC as the true party in interest renders all evidence of matters extraneous to banking records to have been improperly admitted as a matter of federal law; (10) F & A is not entitled to judgment against the FDIC for fraud, deceptive trade practices, usury, or to awards of punitive damages and attorneys' fees as a matter of federal law; and (11) the FDIC is entitled to raise for the first time on appeal all rights and remedies available to it even though entry of judgment preceded the receivership. These three points of error are addressed together by the FDIC in its brief.

## ERRONEOUS ADMISSION OF EVIDENCE

■ The FDIC contends in point of error nine that the appointment of FDIC as receiver caused all evidence of matters extraneous to banking records introduced by F & A at trial to have been improperly admitted because of controlling federal law protective of failed federally insured institutions and the assets of the agencies that insure its deposits. Therefore, the FDIC argues, F & A's claims fail as a matter of federal law under *D'Oench, Dhume & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987).

F & A's claims arose from alleged prereceivership conduct of FCB. The claims generally involved deceptive trade acts or practices, negligence, fraud, breach of fiduciary duty, impairment of collateral, gross negligence, and attorneys' fees. At trial, evidence extraneous to the banking records of FCB was admitted on the issue of these claims and defenses. Now, on appeal, the issue is whether facts giving rise to F & A's claims, even though established at trial, will nonetheless fail on appeal as a matter of law under the federal common law exclusionary principles set forth in *D'Oench* and *Langley*. This issue has already been adversely decided against F & A and in favor of the FDIC in *Stone*. *See Stone*, 787 S.W.2d at 481–82. We therefore hold that the appointment of the FDIC as receiver, while the judgment is on appeal, causes all evidence introduced at trial of matters extraneous to banking records to have been erroneously admitted as a matter of federal law. *See Stone*, 787 S.W.2d at 484. We sustain the FDIC's ninth point of error.

## F & A'S AFFIRMATIVE CLAIMS

■ FDIC's point of error number ten concerns the judgment against the FDIC for fraud, deceptive trade practices, usury, and the awards of punitive damages and attorneys' fees. As earlier stated herein, evidence concerning affirmative claims such as fraud and deceptive trade practices typically involve matters extraneous to the lender's records and are barred by *D'Oench* and *Langley*. *See Stone*, 787 S.W.2d at 491. Here, the evidence was based on FCB's actions in connection with the subsequent Wilson transaction. This evidence is oral and extraneous to the original note transactions with F & A. Therefore, it is to be excluded. *See Stone*, 787 S.W.2d at 490–91.

■ Similarly, usury[5] and punitive damage claims are unavailable to F & A as a matter of federal law under *D'Oench* and *Langley*. *Stone*, 787 S.W.2d at 492; *FDIC*

---

**5.** At trial, F & A contended that usurious interest was charged on notes two and three. The court awarded statutory penalties for usury to-taling $7,055 and $1,875 in related attorneys' fees. The notes were discharged based on impairment of collateral.

*v. Tito Castro Constr., Inc.*, 548 F.Supp. 1224, 1226 (D.P.R.1982), *aff'd on other grounds*, 741 F.2d 475 (1st Cir.1984) (as matter of federal law, FDIC, in corporate capacity, not subject to state usury claim); *Professional Asset Mgmt., Inc. v. Penn Square Bank, N.A.*, 566 F.Supp. 134, 136 (W.D.Okl.1983); *see also FDIC v. Zoubi*, 792 S.W.2d 825 (Tex.App.—Dallas 1990, n.w.h.) (exemplary damages not recoverable).

■ As to attorneys' fees, recovery of attorneys' fees was not specified in F & A's contract, and there is not a collateral fund from which they could be recovered. Therefore, F & A's claim for attorneys' fees cannot be asserted against the assets of FCB. *Stone*, 787 S.W.2d at 492–93; *Interfirst Bank Abilene, N.A. v. FDIC*, 777 F.2d 1092, 1097 (5th Cir.1985). The award of attorneys' fees to F & A was therefore precluded under federal common law. *Stone*, 787 S.W.2d at 492–93. FDIC's point of error number ten is sustained.

### PRESERVATION OF ERROR

■ In point of error number eleven, the FDIC contends that it is entitled to raise, for the first time on appeal, all rights and remedies available to it in the trial court even though the judgment against FCB preceded the event of receivership by the FDIC. In *Stone*, this Court held that the *D'Oench* federal law defenses are available to the FDIC and can be raised to eviscerate a Texas state court. *appealable* judgment rendered before the receivership. *Stone*, 787 S.W.2d at 484–85. This is so regardless of the FDIC's knowledge of the trial court judgment at the time of the occurrence of receivership. *Stone*, 787 S.W.2d at 485–86; *see also Langley*, 108 S.Ct. at 402. Section 1821(d)(13)(B) of FIRREA [6] authorized the exercise of all rights and remedies available to the FDIC in the instance of appealable judgments. *Stone*, 787 S.W.2d at 484–85.[7] As in *Stone*, the judgment in favor of F & A is not a final,

appealable judgment under section 1821(d)(13)(B) because it is still subject to examination or correction on appeal. *Stone*, 787 S.W.2d at 482; *Larsen*, at 42–43. Accordingly, we hold that the FDIC can assert the federal law defenses of *D'Oench* and section 1823(e) before this Court even though these defenses were not raised at trial or preserved for review on appeal. *Larsen*, at 42; *Stone*, 787 S.W.2d at 481. *But see FDIC v. Golden Imports, Inc.*, No. 88–307, —— S.W.2d —— (Tex.App. —Houston [1st Dist.] December 21, 1989, n.w.h.) (not yet reported). We sustain the FDIC's eleventh point of error.

### POINT OF ERROR TWELVE

### F & A'S DEFENSES AGAINST THE NOTES

■ In its twelfth point of error, the FDIC contends that F & A's defenses of gross negligence, breach of fiduciary duty, and impairment of collateral cannot be sustained against the FDIC and that the notes should not have been discharged. The FDIC contends that gross negligence, breach of fiduciary duty, and impairment of collateral are "personal" and not "real" defenses and thus are not sustainable against the FDIC. We agree. These defenses are not defenses against the note itself but are defenses or claims stemming from the underlying transaction. Evidence concerning any side undertakings with respect to the Wilsons' credit history and sale of collateral is inadmissible against the FDIC and cannot be used to further a defense in a suit by the FDIC to collect on the notes. *Campbell Leasing, Inc. v. FDIC*, 901 F.2d 1244, 1248 (5th Cir.1990); *FDIC v. Wood*, 758 F.2d 156, 159 (6th Cir. 1985), *cert denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1986). Accordingly, the judgment, insofar as it discharges the promissory notes, is invalid under federal common law. The FDIC's twelfth point of error is sustained.

---

**6.** Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Public Law Number 101–73, 103 Stat. 183 (1989).

**7.** Both *Stone* and *Larsen* recognize that this holding places this Court in disagreement with the decisions of some federal courts. *Stone*, 787 S.W.2d at 485; *Larsen*, at 41.

## F & A'S REPLY POINTS

### 1.  Preservation of Error

F & A filed a supplemental brief in reply to the FDIC's supplemental brief.  In its ninth reply point, F & A contends that the FDIC has not preserved error in the trial court and cannot, therefore, complain of the admissibility of evidence or the judgment of the trial court.  As discussed earlier, this issue has been decided adversely to F & A in *Larsen*.  The FDIC can assert the federal law defenses of *D'Oench* and section 1823 before this Court even though the defenses were not raised at trial or preserved for review on appeal.  *Larsen*, at 42.

### 2.  Loss of Plenary Jurisdiction

In reply point ten, F & A contends that the FDIC is not entitled to eviscerate a valid state court judgment based upon federal law defenses asserted after the trial court had lost its plenary jurisdiction.  In *Larsen*, this Court noted that section 1821(d)(13)(B) of FIRREA authorized the exercise of all rights and remedies available to the FDIC in its corporate capacity in the event of any *appealable* judgment. *Larsen*, at 42 (citing *Stone*, 787 S.W.2d at 484.  The judgment in favor of F & A is not final and is "appealable" under section 1821(d)(13)(B) because it is still subject to examination and correction on appeal. *Larsen*, at 42.  Consequently, the FDIC can assert the federal common law defenses of *D'Oench* and of section 1823(e) before this Court.  This is so even though the trial court has lost plenary jurisdiction. *Larsen*, at 42.

### 3.  Assets of the Estate

■  In reply to point eleven, F & A contends that *D'Oench* and section 1823(e) are not applicable to this matter because the notes in question and funds to secure the judgment were not "assets of the estate" of FCB when the FDIC was substituted as a party.  F & A argues that the trial court judgment discharged it from liability on the notes.  F & A contends that this extinguished the notes making them null and void.  Therefore, F & A argues, the FDIC acquired no "right, title, or interest" to the instruments so as to allow the application of *D'Oench* and section 1823(e) defenses.

In *Stone*, this Court held that such a judgment concerning notes is not final as to the FDIC as long as it is *appealable.* Therefore, since the trial court's judgment is not final, the notes are not "void," and the FDIC can assert *D'Oench* federal law defenses post trial court judgment in an effort to protect "assets" of the failed institution.  *See Stone*, 787 S.W.2d at 483–84; *see also Larsen*, at 40–41.

### 4.  Knowledge of the Judgment

■  In reply point twelve, F & A contends that the FDIC's knowledge of the judgment before it purportedly placed FCB in receivership precludes it from relying on the *D'Oench* and section 1823(e) defenses. F & A contends that the FDIC had actual knowledge of the claims and defenses before it became receiver of FCB because it had notice of the judgment.  Therefore, F & A argues, the FDIC was not misled by any "secret agreement" when it placed FCB into receivership.  In *Larsen* and *Stone*, this Court held that the FDIC's knowledge of the trial court judgment does not bar application of *D'Oench* and section 1823(e) defenses.  *Stone*, 787 S.W.2d at 485–86; *Larsen*, at 42; *see also Langley*, 108 S.Ct. at 402.  This contention is without merit and is overruled.

### 5.  Constitutional Issues

In its thirteenth reply point, F & A contends that application of section 1821(d) and (e) and *D'Oench* doctrine defenses to this case violate the federal and state constitutional rights of F & A, arguing that this application: (1) violates the State's prohibition against making retroactive laws: (2) deprives its citizens of "remedy by due process of law";[8] and (3) deprives citizens of "life, liberty, property, privileges or immunities ... except by due course of the law of the land," citing article I, sections

---

**8.**  Due process as concerns deprivation of property is not raised by F & A.

13, 16, and 19 of the Texas Constitution. Additionally, F & A contends that its right to access in the court has been restricted in violation of the due process clause of the United States Constitution, citing amendment XIV, section 1 of the United States Constitution. F & A asserts that allowing a successor in interest such as the FDIC to substitute itself for a party after trial and obtain a chance to relitigate the suit based upon defenses not asserted at trial violates its state constitutional right to seek effective redress of grievances in court. F & A further argues that the due process clause of the United States Constitution has been violated because its state law rights have been arbitrarily denied.

### A. Retroactive Application

■ F & A asserts that application of section 1821(d)(13) to the present case would be "retroactive" and improper. This Court has held that the application of FIRREA to this type of case is not "retroactive." *Stone*, 787 S.W.2d at 488. Since we hold that the *D'Oench* and section 1823(e) defenses can be raised at any time prior to final judgment and no final judgment exists, the application of the statute is prospective. *Stone*, 787 S.W.2d at 488. A retroactive law is one which is intended to act on things past. *Stone*, 787 S.W.2d at 488; *Aetna Ins. Co. v. Richardelle*, 528 S.W.2d 280, 284 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.); *see also Ex parte Abell*, 613 S.W.2d 255, 262 (Tex. 1981). This appeal is not past. The statute applies to any "appealable judgment," which we have in the present case. The new law is applied prospectively—that is, to decisions handed down after the new law is announced. *Noble v. Drexell, Burnham, Lambert, Inc.*, 823 F.2d 849, 850 n. 2 (5th Cir.1987). The time about which the statute spoke was either in the present or in the future and has no "retroactive" application here. Indeed, the statute is not "reaching back" to effect prior, vested rights. It merely defines the course for appellate review of this case—such review occurring well after the effective date of FIRREA. *Stone*, 787 S.W.2d at 488. We conclude, therefore, that section 1821(d)(13)(B) applies in the present case even though the judgment had been entered before the FDIC became a party. For these reasons, we hold that application of section 1821(d)(13)(B) to the present case would not be "retroactive" and improper.

### B. Right to Access Courts, Due Process, State Rights

■ F & A also argues that its (1) right to access to the courts/right to redress grievances, (2) rights to due process and due course of law, and (3) state rights have been violated. F & A asserts that allowing the FDIC to (1) substitute itself as a party and relitigate issues, and (2) assert defenses on appeal without preserving error in the trial court denies it these rights and flies in the face of fundamental fairness.

We hold that the *D'Oench* doctrine and section 1823 do not deprive F & A of its right to litigate these issues and seek redress in the courts. F & A has deprived itself of certain defenses to liability by failing to protect itself in the manner required by the *D'Oench* doctrine. *See Campbell Leasing*, 901 F.2d at 1248 (addressing taking of property and *D'Oench* doctrine). F & A was in a position to protect itself by insuring that the alleged Wilson/credit check/collateral transfer transaction and alleged agreements with FCB were adequately documented in FCB's records. It failed to do so. Because the absence of such documentation is likely to mislead banking authorities as to the value of promissory notes, F & A is estopped from asserting against the FDIC any claims or defenses relating to these transactions. *See Campbell Leasing*, 901 F.2d at 1248 (maker must preserve defenses by documenting same in bank records). The doctrine "favors the interests of depositors and creditors of a failed bank, who cannot protect themselves from secret agreements, over the interests of borrowers, who can." *Bell & Murphy Ass'n v. Interfirst Bank Gateway, N.A.*, 894 F.2d 750, 753 (5th Cir.1990). Section 1823 does not violate the state or federal constitution by holding F & A to the text of the notes it executed. F & A's asserted due process

and other rights are not exceptions to the parol evidence rule.

Concerning F & A's argument that its constitutional rights were violated when the FDIC gained the opportunity to relitigate claims already litigated and brought to judgment, we hold that Congress may constitutionally enact reasonable legislation that shields the FDIC in this manner. *Cf. Chatham Ventures, Inc. v. FDIC*, 651 F.2d 355, 362–63 (5th Cir.1981) (discussing federal holder in due course doctrine). F & A's thirteenth reply point is without merit.

### 6. Effect of Supersedeas Bond

■■■ In reply point fourteen, F & A contends that it is entitled to its judgment for compensatory and punitive damages, attorneys' fees, and discharge from the notes awarded based upon fraud, deceptive trade practices, usury, gross negligence, and breach of fiduciary duty. F & A contends that because FCB posted a supersedeas bond, the funds securing the judgment ceased to be assets of FCB and were not part of the assets available to the FDIC for distribution. Therefore, F & A argues, the FDIC cannot complain that the damages would affect its effort to liquidate FCB or offend the doctrine of sovereign immunity, citing *Olney Savings & Loan Asso. v. Trinity Bank Savings Ass'n.*, 885 F.2d 266 (5th Cir.1989), and *Grubb v. FDIC*, 833 F.2d 222 (10th Cir.1987).

This Court in *Stone* and *Larsen* has held that as long as a judgment is still appealable, economic value remains in the asset itself and does not render an asset, such as a note, void. *Stone*, 787 S.W.2d at 484; *Larsen*, at 40–41. The fact that a supersedeas bond was filed did not cause the notes to cease to be assets of FCB.

### 7. Scheme

■■■ F & A also argues that there is no evidence that it lent itself to a scheme or arrangement whereby any banking authority was likely to be misled. F & A contends that there was no issue of its own culpability or negligence at trial. It argues that, because of this, the FDIC cannot assert its special defenses to defeat F & A's causes of action or its discharge under the notes.

As set forth previously, F & A's claims and defenses are based on alleged side agreements with FCB concerning the collateral and FCB's actions concerning sale of the collateral. As this Court held in *Stone*, neither federal nor state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions. *Stone*, 787 S.W.2d at 479; *Langley*, 484 U.S. at 91–92, 108 S.Ct. at 401. In *D'Oench*, the United States Supreme Court announced a rule of federal common law affording the FDIC protection from defenses typically raised by obligors in collection or deficiency suits. The essence of the *D'Oench* rule is that the FDIC is entitled to rely, to the exclusion of any extraneous matters, on the official bank records which set forth the rights and obligations of the bank and those to whom the bank lends money. This rule reflects the "federal policy to protect [the FDIC] and the public funds which it administers, against misrepresentations as to the securities or other assets in the portfolios of the banks which [it] insures or to which it makes loans." *D'Oench*, 315 U.S. at 457, 62 S.Ct. at 679. Congress codified and expanded *D'Oench* in section 1823(e). *In re Kanterman*, 97 B.R. 768, 774 (Bankr.S.D.N.Y.1989).

The purposes underlying the policies of *D'Oench* and section 1823 are to encourage prudent consideration of lending practices, to assure proper recordation of banking acts, to guard against collusive reconstruction of terms, and to satisfy the urgent need of banking regulators to be able to determine the face value of the remaining assets of failed institutions. *See Langley*, 484 U.S. at 95, 108 S.Ct. at 403. To effectuate these goals, the courts have routinely stricken defenses that arise out of representations which are not evidenced in the official loan documents. *See, e.g., FSLIC v. Lafayette Inv. Pro., Inc.*, 855 F.2d 196, 197–98 (5th Cir.1988) (barring oral agreement as to nonliability); *FDIC v. Gulf Life Ins. Corp.*, 737 F.2d 1513, 1516–17 (11th Cir.1984) (barring defenses of waiver or

estoppel); *FSLIC v. Ziegler*, 680 F.Supp. 235, 237 (E.D.La.1988) (barring defense of failure of consideration).

Cases such as F & A's rely heavily on evidence showing, for example, custom and usage and alleged side agreements that are not contained in any writing, much less on the official books of the lending institutions. F & A's claims and defenses invade the exact areas that section 1823(e) was designed to protect—prudent consideration of lending practices and loans, proper recordation of transactions to guard against collusive reconstruction of terms, and the ability to determine the value of the assets of a failed institution. *Stone*, 787 S.W.2d at 479–80. There need not be an evil scheme for the section 1823(e) defense to apply. *See* 12 U.S.C. § 1823(e) (1989). The point is that there were side agreements or arrangements, not in writing, which would tend to mislead federal and state bank examiners who rely on bank records in evaluating the worth of a bank's assets. *See Stone*, 787 S.W.2d at 479. *FDIC v. MEO*, 505 F.2d 790 (9th Cir.1974), cited by F & A, is distinguishable as it does not concern section 1823(e) defenses. *See MEO*, 505 F.2d 790 *passim; In re Kanterman*, 97 B.R. at 776 (innocence and non-negligence of the party sued on a note or guaranty is irrelevant under section 1823(e), though a consideration with *D'Oench* doctrine application). F & A's contentions are without merit.

In light of our sustaining four of the FDIC's points of error, we need not reach its remaining points. That portion of the trial court's judgment as to F & A's counterclaims is reversed and it is rendered that F & A take nothing. That portion of the trial court's judgment discharging the three subject promissory notes against F & A is vacated and remanded for a new trial. The portion of the judgment rendering judgment for FCB against the Wilsons is affirmed.

ENOCH, Chief Justice, dissenting.

I agree with the majority opinion to the extent that the Federal Deposit Insurance Corporation (FDIC) has the right to intervene in this case on appeal. However, I dissent from the majority's determination that the FDIC, as post-judgment intervenor, can assert federal defenses unique to its federal status. The majority primarily relies on recent case law, which overbroadly interprets the relevant federal statute while summarily dismissing precedential federal and state case law as well as the well-established principles of federalism, comity, and due process.

The FDIC, as a post-judgment intervenor, asserts on appeal not only state law grounds raised by First Consolidated Bank—Pleasant Run—N.A. (FCB), but also federal common law defenses available only to it, such as the rule of estoppel announced in *D'Oench Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and codified in section 1821(e) of Title 12 of the United States Code. To support its position, the FDIC relies solely upon *FSLIC v. Stone*, 787 S.W.2d 475 (Tex. App.—Dallas 1990, writ pending). In *Stone*, a panel of this Court held that section 1821(d)(13) of Title 12 of the United States Code, as amended by the provisions of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101–73, § 212, 103 Stat. 183, 222 (1989), provides that the FSLIC[1] can assert all federal defenses available to it on appeal, even if it becomes the receiver for a defendant banking institution *after* a trial court judgment has been rendered. *Stone*, 787 S.W.2d at 483. This reasoning is faulty.

*Stone* bases its entire conclusion on subpart A of section 1821(d)(13), which provides:

(d)(13) Additional Rights and Duties

(A) Prior Final Adjudication—The [FDIC] shall abide any final *unappealable* judgment of any court of competent jurisdiction which was rendered before the appointment of the [FDIC] as conservator or receiver.

12 U.S.C. § 1821(d)(13)(A) (1989) (emphasis added). Looking through subpart A, *Stone*

---

**1.** FSLIC was abolished by FIRREA § 401(f)(1),     103 Stat. at 356.

then claims that subpart B of section 1821(d)(13) of Title 12 of the United States Code means that the FSLIC has both standing to pursue all appeals and the authority to exercise all the "rights and remedies" available to the failed institution as well as the FSLIC in its corporate capacity *regardless of an existing, errorless judgment from the trial court. Stone,* 787 S.W.2d at 484. I disagree with *Stone's* interpretation of section 1821(d)(13). Subpart A of section 1821(d)(13) is not capable of sustaining as broad an interpretation of FIRREA as *Stone* contends and, not surprisingly, *Stone* cites no authority for its interpretation of section 1821(d)(13). What does surprise me is that, despite a lack of supporting authority, *Stone* runs headlong to a conclusion contrary to established case law, both state and federal. What is that law? *D'Oench* defenses *cannot* be asserted after a state court renders a final judgment. *Thurman v. FDIC,* 889 F.2d 1441, 1447 (5th Cir.1989); *Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n,* 885 F.2d 266, 275 (5th Cir.1989); *Grubb v. FDIC,* 868 F.2d 1151, 1159 (10th Cir.1989); *Federal Sav. & Loan Ass'n v. Kennedy,* 732 S.W.2d 1, 3 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). *Stone* stretches beyond reason to distinguish these cases. I fail to see how subpart A, a truism that the FDIC must obey a final unappealable judgment, can support such a sweeping generalization as the one *Stone* makes that a *post-judgment* intervenor can raise its special defenses for the first time on appeal. At most, subpart A can be said to protect the few remaining assets of a failed banking institution from execution during the appeal of a final judgment against that institution without the FDIC having to post a supersedeas bond. *See* 12 U.S.C. § 1821(d)(13) (1989); Tex.R.App.P. 47(a).

The two cases *Stone* distinguishes as being decided prior to the enactment of FIRREA held that the FSLIC was precluded from raising *D'Oench* defenses to eviscerate a valid state court judgment rendered before the receivership. *Grubb,* 868 F.2d at 1159; *Kennedy,* 732 S.W.2d at 2. The *Grubb* decision reasoned that a judgment voiding an asset left no asset for the

receiver to acquire and that knowledge of the judgment prevented the FDIC from being misled. *Grubb,* 868 F.2d at 1158–59. *Stone* asserts that the *Grubb* court ignored the fact that an appealable judgment might be reversed, and economic value remains in the asset itself. *Stone,* 787 S.W.2d at 483–84. However, a more correct statement would be that, *if* an appealable judgment is reversed, then economic value of the asset returns. Another failure of *Stone* is that it claims that the *Grubb* court did not consider the Supreme Court's holding in *Langley* that rejected knowledge of the FDIC as a defense to *D'Oench. Stone,* 787 S.W.2d at 483–84. However, *Grubb* involved a final judgment, where *Langley* involved only a pending lawsuit. *Compare Langley,* 108 U.S. at 400 *with Grubb,* 868 F.2d at 1158–59. Certainly this is a distinction of not insignificant moment. *Stone* makes no direct attack on *Kennedy,* but merely notes that *Kennedy* was decided prior to the enactment of FIRREA and that FSLIC, as a receiver, was more analogous to a trustee in bankruptcy who not only steps into the shoes of the failed institution, but also possesses additional rights under federal law. *Stone,* 787 S.W.2d at 482. What the *Kennedy* court held was that the FSLIC "simply stepped into the shoes" of the failed institution, having the same but no greater rights than the failed institution to *challenge the trial court's final judgment. See Kennedy,* 732 S.W.2d at 3. Throughout its attack on *Grubb* and *Kennedy, Stone* wholly fails to explain by what avenue a judgment is reversed where there is no error.

In forcing its conclusion, *Stone* also challenges post-FIRREA authority. *Olney* holds that the provisions of FIRREA which provided the FSLIC, as conservator, with all "rights and remedies" available to the insured depository institution before appointment of a conservator, did not empower the FSLIC with the right to raise its unique federal defenses for the first time on appeal after entry of final judgment to which it was not a party. *Olney,* 885 F.2d at 275. The court specifically addressed

and interpreted the provisions of FIRREA as follows:

> FSLIC argues that this new provision allows conservators to raise § 1823(e) on appeal for the first time, after the entry of a final judgment to which they were not a party. *We read the same section, and find that it means that conservators and receivers are given standing to pursue all appeals, where before its enactment only FDIC acting in its corporate capacity could pursue certain claims. This section gives FSLIC no new substantive rights in this appeal.*

*Olney*, 885 F.2d at 275 (emphasis added). To reach its unique result, the *Stone* panel ignores the weight of *Olney* for two reasons. First, *Stone* claims the language of section 1812(d)(13) concerning "rights and remedies" speaks to more than just standing, as postulated by the *Olney* court. *Stone*, 787 S.W.2d at 484. Second, *Stone* asserts that the *Olney* court's interpretation is not governing because it incorrectly interpreted FIRREA too narrowly. Both of these distinctions grasp for straws. As recently as November 29, 1989, the Fifth Circuit Court of Appeals confirmed its interpretation of FIRREA by again holding that the FSLIC was precluded from asserting any federal defenses unique to its federal status as a *post-judgment* intervenor. *Thurman v. FDIC*, 889 F.2d at 1447. In *Thurman*, the court added that such an approach creates a disincentive by the FSLIC to gamble on a verdict while holding a *D'Oench* defenses' trump card. *Thurman*, 889 F.2d at 1447. The court reasoned that the weighing of interests did no violence to the policies behind *D'Oench*. The parties to the suit at trial were the parties to the transaction and the fact remains that, when final judgment was rendered below, five days before the receivership was created, no party to the case could have asserted these defenses. *Thurman*, 889 F.2d at 1447. Without at all addressing its reasoning, *Stone* excuses *Thurman* because it relied on *Grubb*. *Stone*, 787 S.W.2d at 485. *Stone* is simply wrong.

## OLNEY AND THURMAN

Both *Olney* and *Thurman* correctly interpret FIRREA and should be followed rather than summarily dismissed. Their holdings are obviously consistent with and follow the well-established principles of federalism, comity, and due process, while *Stone's* interpretation of section 1821(d)(13) just as obviously ignores these principles. Comity is a proper respect for state functions and is referred to by many as "Our Federalism." It recognizes the fact that the entire country is made up of a union of separate state governments and a continuance of the belief that the national government will fare best if the states and their institutions are left free to perform their separate functions in their separate ways. The concept represents a system in which there is a sensitivity to the legitimate interests of both state and national governments. Although anxious to vindicate and protect federal rights and federal interests, the national government always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the states. *Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971). Although usually applied to situations where a federal court attempts to interfere with the actions of a state court, *Stone's* interpretation of section 1821(d)(13) presents an analogous situation. *Stone's* interpretation violates the state appellate court's role of reviewing judgments for error and orders it to consider the FSLIC's special defenses raised for the first time on appeal. Under *Stone's* application, we find an error free judgment reversed contrary to our state law. *See* TEX. CONST. ART. V, § 6; TEX.R.APP.P. 80 and 52(a). This directly and unduly interferes with a legitimate activity of the state. *See FDIC v. Sellards*, 731 F.Supp. 1300, 1301–02 (N.D. Tex.1990). Federal law pre-empts state law in traditional fields of state regulation only when that was the clear and manifest purpose of Congress. *Coit Indep. Jt. Venture v. FSLIC*, 489 U.S. 561, 109 S.Ct. 1361, 1377, 103 L.Ed.2d 602 (1989) (Scalia, J., concurring). The *Olney* court's interpretation of section 1821(d)(13) neither unduly interferes with a legitimate activity of

a state nor pre-empts a state law. Both *Olney* and *Thurman* clearly hold that after judgment (and presumably not until that judgment is set aside on proper appellate grounds) the *D'Oench* defenses of the FDIC are not available. Only *Stone* reaches the remarkable conclusion that FIRREA demands that an errorless judgment be reversed.

Further, *Stone* treads where we must not. Assuming that *Stone* is a reasonable interpretation of this federal statute, a point I do not concede, we are not to place an interpretation upon a statute that creates an unconstitutional application. *See State v. Shoppers World, Inc.*, 380 S.W.2d 107, 111 (Tex.1964) (holding that a statute must not be given the one of two reasonable interpretations which will render it unconstitutional). Moreover, it is our duty as a court to construe statutes in a manner which avoids serious doubt as to their constitutionality. *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 841, 106 S.Ct. 3245, 3251, 92 L.Ed.2d 675 (1986); *FSLIC v. Glen Ridge I Condominiums, Ltd.*, 750 S.W.2d 757, 759 (Tex.1988) (*Glen Ridge II*). Where such serious doubts arise, a court should determine whether a construction of the statute is fairly possible by which the constitutional question can be avoided. *Commodity Futures*, 478 U.S. at 841, 106 S.Ct. at 3251, *Glen Ridge II*, 750 S.W.2d at 759.

Procedural due process requires a fair and impartial trial before a competent tribunal. Included within this requisite is an opportunity to be heard and a reasonable opportunity for a hearing, which encompasses reasonable notice of the claim or charge against the individual so as to advise him of the nature thereof and the relief sought. *In re B— M— N—*, 570 S.W.2d 493, 502 (Tex.Civ.App.—Texarkana 1978, no writ). The right to a hearing requires judicial examination of every issue that, according to established procedure,

may affect attainment of a legal trial, and in such a trial determine the cause according to law. *In re B— M— N—*, 570 S.W.2d at 502.

Due process of law not only includes procedural protection, but also substantive protection. It is a direct constitutional restraint upon the substance of legislation and means that a legislative curtailment of personal or property rights must be justified by a resultant benefit to the public welfare.

*In re B— M— N—*, 570 S.W.2d at 502.

The Supreme Court stated that under the due process clause "justice must satisfy the appearance of justice" and that, since a creditor's property is subject to the jurisdiction of the court during an ordinary receivership proceeding, due process protections still must apply. *Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954). Although the government is currently a party in the instant case, the substantive rights at issue arose out of transactions conducted between private parties and not out of constitutional or legislative provisions governing the FDIC. The rights upon which F & A Leasing sued are designed to promote honesty and the performance of obligations in assumed guaranty transactions and to assure that property interests of the original guarantor are protected against dishonesty and non-performance of obligations. *Glen Ridge I Condominiums, Ltd. v. Federal Sav. and Loan Ins. Corp.*, 734 S.W.2d 374, 383 (Tex. App.—Dallas 1986) (*Glen Ridge I*), *writ denied*, 750 S.W.2d 757 (Tex.1988), *cert. denied*, 490 U.S. 1004, 109 S.Ct. 1637, 104 L.Ed.2d 153 (1989).[2] This case has been tried. On appeal we find no error in the judgment. Thus, there is no notion in our law permitting us to reverse. Participants in our system expect and rely upon these rights. A nationally uniform federal rule of decision that strips parties of the benefit of judgments which have been rendered for

---

**2.** This Court in *Glen Ridge I* determined that the FSLIC, as receiver, did not have adjudicatory power over claims as that would be a violation of Article III of the United States Constitution. *FSLIC v. Glen Ridge I Condominiums, Ltd.*, 750 S.W.2d 757, 758–59 (Tex.1988) (*Glen Ridge II*).

Although a majority of the Texas Supreme Court disagreed with the reasoning of the court of appeals, it agreed with the court's judgment that the district court's jurisdiction over the investor's claims had not been pre-empted by federal statutes. *Glen Ridge II*, 750 S.W.2d at 760.

their protection by a court and replaces them with federal rules crafted for the benefit of the FDIC as a post-judgment intervenor violates constitutional due process rights in commercial relationships. *See Glen Ridge I,* 734 S.W.2d at 383. *Stone* should be set aside.

I respectfully dissent.